## HESTER A. DAVIS *v.* S. FARRAR DUNN.

Special Term at Brattleboro, February, 1916.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed May 6, 1916.

*Status of Rules of County Court—Adverse Party as Witness—*
*Right to Examine—Physicians—Malpractice—Radiographs*
*—Authentication and Admissibility.*

A rule of the county courts, made by the superior judges under P. S. 1346, has the force of law, and while it stands must be applied to all cases that come within it, regardless of any rule of practice adopted by the bar of a particular county.

While under P. S. 1596, a party may examine the adverse party under the rules applicable to cross-examination, he cannot, except for the purpose of identification, examine him, nor any other witness, as to an x-ray photographic plate not verified or authenticated by evidence other than itself.

X-ray pictures, as well as common photographs, may be proved and used in evidence in the same manner as maps and other diagrams, and may be verified either by the person who took them or by any person who can state that the object sought to be shown is fairly represented thereby.

X-ray photographic plates of plaintiff's wrist and hand, properly identified, are admissible to prove by expert comparison the identity of another such plate on which plaintiff relied to show a Colles' fracture.

A party is bound by the answers of a witness elicited on cross-examination in regard to a matter wholly collateral to the issue.

In an action against a physician for malpractice, where plaintiff sought to show a Colles' fracture by x-ray photographs of her wrists, which defendant claimed showed no fracture, it was not error to exclude like photographs of alleged normal wrists of other persons, which would have raised collateral issues.

CASE for malpractice. Plea, the general issue. Trial by court at the September Term, 1914, Windham County, *Water-*

*man*, J., presiding. Judgment for the defendant. The plaintiff excepted. The opinion states the case.

*Gibson & Daley* for the plaintiff.

*O. E. Butterfield, Chase & Chase* and *A. F. Schwenk* for the defendant.

WATSON, J. This case was tried by the court. The findings of fact were filed, judgment was rendered for the defendant, and exceptions to the judgment were filed, all on the same day, November 30, 1914. Later an amended bill of exceptions was filed, and finally on January 3, 1916, a substitute bill was filed. In the last named bill, the transcript of the evidence is referred to in respect to the exceptions taken during the trial and is made a part thereof for that purpose "and shall control according to rule 31, section 2, of the (new) county court rules. It is made the bill of exceptions in this case, in respect to the exceptions taken during the trial, in substitution of any bill of exceptions on file." Notwithstanding the case was tried and determined in the court below before the present rules of the county courts went into effect, we treat the reference to rule 31, section 2, as treated by both sides in argument, as properly made. By that rule and section, bills of exceptions shall refer to the transcript of the evidence and make the same controlling, "except in cases in which the parties otherwise agree or the presiding judge otherwise directs." Here the presiding judge otherwise directed to the extent of referring thereto only for the specific purpose named, and we confine our use of it accordingly.

It is said that there are rules adopted by the Windham County Bar for the purpose of expediting the trial of causes, and that these rules have the approval of the superior judges. Of those rules, No. 5, reads: "The court is requested to direct that all cases of objection and exception shall be noted as a matter of course and without request or direction therefor except where the court shall distinctly rule as a matter of discretion, in which case, an exception, if one is claimed, shall be specifically noted." The plaintiff claims to have proceeded under this rule in saving her exceptions during the trial. Defendant calls our attention to one of the regular county court rules that no exception lies without a ruling by the court. It becomes neces-

sary, therefore, to consider the force of rules, before taking up the questions claimed to have been saved by the plaintiff. By P. S. 1346, "The superior judges shall make all necessary rules for the orderly practice in the county courts and courts of chancery, which rules shall be uniform." A rule made by the superior judges, within the authorization of this statute, until amended or superseded, has the force of law, and while it stands it is binding and must be applied to all cases that come within it, (*Taft* v. *Taft*, 82 Vt. 64, 71 Atl. 831; *Commercial Jewelry Co.* v. *Dente*, 83 Vt. 350, 75 Atl. 962,) except that by rule 52 in force when this case was tried, in exceptional cases, to prevent a failure of justice, a county court, the presiding judge, or a superior judge when it is for him to act alone, may take a case out of the general rules.

By rule 28, (then in force,) paragraph 2, "No exception shall be allowed unless the point relied upon was presented to and exception noted by the court at the time of making the decision excepted to, if a decision of the court, and if to the charge, before the jury retires." This being one of the general rules of the county courts, and uniform, made under the provisions of the statute quoted above, it can not be affected in its provisions or operations by any local rule or rules of any particular county. Local rules operating in a single county, are not in conformity with the statute, that the "rules shall be uniform." So far therefore as the exceptions are concerned, we must be controlled by the general rules of the county courts, and not by the local rules of the county.

We will consider the points made in plaintiff's brief in their order.

I. It appeared that the plaintiff and the defendant reside in the village of Wilmington, this State, the latter being a practicing physician having an office there; that in March, 1914, the plaintiff slipped on some ice, fell, and injured her right arm at the wrist. In putting in her opening case, the plaintiff called the defendant to testify, and examined him at considerable length as to her coming to see him at the time of her accident, his examination of her injured arm, the condition in which he found it, his treatment of it, the number of times he saw her respecting it, who were present, etc. During such examination, the plaintiff's attorney showed defendant an X-ray plate marked "Plaintiff's Exhibit 1," and asked him to examine it, particularly the

right hand. Having done so, the defendant was asked whether he discovered anything wrong with the bones in the right hand shown on the plate. Objection being made on the ground that there was no evidence showing what or whose hand it was, or anything about it, plaintiff's attorney offered to show that one of the bones in the right arm, as represented on the plate, had been fractured; that the photograph shows a fractured bone of the right arm. The court ruled that at that stage of the case, the defendant need not answer the question, because the plate had not been identified, and there had been no offer to show that it was a plate of the plaintiff's arm or wrist. To this ruling an exception was allowed the plaintiff. The record shows no other exception by the plaintiff during such examination of the defendant. It is said to have been error not to allow the plaintiff an opportunity to examine the defendant as she sought to do; that by the statute (P. S. 1596) she had a right to examine him under the rules applicable to the cross-examination of witnesses. It is true that she had the right to call the defendant to testify as a witness in her behalf, in the same manner and subject to the same rules as other witnesses, and therein could examine him under the rules applicable to the cross-examination of witnesses. *Good* v. *Knox,* 64 Vt. 97, 23 Atl. 520. But the rules governing the examination of other witnesses did not give the right to examine respecting the contents of the X-ray photograph, until the photograph had been properly verified or authenticated by some evidence other than itself. 10 R. C. L. Sec. 360; *Johnson* v. *Bolton,* 43 Vt. 303. Until then the photograph stood, as it were, in a position collateral to any issue in the case, and could not be admitted in evidence, nor, except as it might have a bearing on the question of identity, could witnesses be questioned respecting what is shown thereby. *In re Barney's Will,* 71 Vt. 217, 44 Atl. 75.

II. The plaintiff introduced evidence tending to show that at the time of her injury she went as quickly as she could to the defendant's office which was twenty-five or thirty rods away; that the defendant gave her arm immediate attention; that he examined her wrist, rubbed on some iodine and arnica, and then put on splints and a bandage; that she told him she was afraid the wrist was broken, but after examining it he said he was sure it was not broken, but was badly sprained; that she saw him the next morning, and he then took the bandage off and examined

the wrist as before, again applying splints in dressing it; that
she then told him she was afraid there was something wrong
about it, that it was something more than a sprain, but he said
when it got stronger it would be all right, that he was sure it
was not a break, but was a bad sprain; that she saw him quite a
number of times afterwards at his office, each of which times he
made about the same examination of the arm, taking off the
bandage; that defendant treated it about three weeks, but as her
arm did not seem to improve, she then (on April 13th) called in
Dr. Page of Wilmington to see it; that on examination he found
a very pronounced unreduced Colles' fracture, and he took her
at once to the North Adams Hospital; that on arrival there, she
was sent to the X-ray room, and a plate was made of her wrist;
that the examination of her wrist at the hospital, showed that
she was suffering from a Colles' fracture of two or three weeks'
standing; that she was then anesthetized, and Dr. Page, assisted
by Dr. Bushnell and a nurse, reduced the fracture; that the
plaintiff came back from the hospital with Dr. Page the next
morning, and has since been under his treatment. The plaintiff
testified that an X-ray picture of her arm was taken at the
hospital. Dr. Page testified that he caused such a picture of her
hands to be there taken; that he requested Dr. John Hewitt to
make the plate, saw the plaintiff go into the X-ray room, and the
same day, April 13th, Dr. Hewitt delivered to him the plate
marked "Plaintiff's Exhibit 1"; that he did not see this picture
taken or developed; that at the time of the trial of this case, Dr.
Hewitt was supposed to be in the English army.

Dr. Robert J. Carpenter of North Adams, a physician con-
nected with the hospital at that place, called as a witness by the
plaintiff, testified to having had more than a year's experience in
taking and developing X-ray photographs; that on October 29,
1914, he took and developed X-ray plates of the plaintiff's two
hands, which plates (introduced in evidence) are marked, one as
"Plaintiff's No. 2," and the other as "Plaintiff's No. 3," the
latter being taken with the palms down, and the former with the
palms up; that in No. 3, "On the thumb of the right hand, on
the proximal phalange, the distal end, is a small indentation"
shown, and the same thing is shown in No. 2; that this condition
is not seen on the left hand of either of those plates. The wit-
ness was asked to examine "Plaintiff's Exhibit 1," and see if
the same indentation is there shown, and to state what it shows in

that respect. In this connection counsel for plaintiff offered to show that this X-ray picture is of the same hand shown by plates No. 2 and No. 3; that this indentation is a peculiarity not found in the normal hand, and the offer was one step in identifying plate, exhibit 1, as being a radiograph of the plaintiff's hand. Objection being made, the court ruled that for the present the evidence "may be excluded until we see what you can show." Exception was noted. Dr. Charles R. Aldrich, a practicing physician from Brattleboro and connected with Memorial Hospital there, called as a witness by the plaintiff, testified that on September 28, 1914, he took two X-ray photographs of the plaintiff's right hand and wrist, which photographs (introduced in evidence) are marked, one "Plaintiff's No. 4," and the other "Plaintiff's No. 5"; that the difference between these pictures is, that one is taken with the palm up, and the other with the palm down. Dr. Carpenter being recalled by the plaintiff and shown Nos. 4 and 5, testified that the same indentation is shown on each of those plates as is shown on the picture of the right hand on plates No. 2 and No. 3, to which he before testified. The plaintiff then offered to show by this witness that the same indentation is shown by "Plaintiff's Exhibit 1," as evidence tending to identify that exhibit as a picture of the plaintiff's right hand. The offer was excluded subject to plaintiff's exception. For the purpose of identifying exhibit 1, the witness was asked whether from the examination of Nos. 2, 3, and 4, there was anything by which he could tell whose hand is represented by exhibit 1. Defendant objected on the ground that the last mentioned plate had not been identified as being a picture of the plaintiff's hand, or by whom or when or where. The court made the same ruling as before, saving an exception to the plaintiff. Common photographs may be proved and used in evidence in the same manner as maps or other diagrams; and they may be verified either by the testimony of the person who took them, or by the testimony of others who can state that the object sought to be shown is fairly represented thereby. *Smith* v. *Central Vermont Ry. Co.,* 80 Vt. 208, 67 Atl. 535; *Hale* v. *Rich,* 48 Vt. 217; *Hyde* v. *Swanton,* 72 Vt. 242, 47 Atl. 790; *Hassam* v. *Safford Lumber Co.,* 82 Vt. 444, 74 Atl. 197. A witness who had become familiar with the handwriting of another person only by way of reading several of his undisputed letters, was held competent to testify as to the genuineness of a certain

clause in another letter from the same person, the genuineness of which clause was in dispute. *Blaisdell* v. *Davis,* 72 Vt. 295, 48 Atl. 14. It has long been settled in this State that an alleged signature of a person may be proved to be false or genuine by comparing it with a signature or signatures of that person established as genuine. *Rowell* v. *Fuller,* 59 Vt. 688, 10 Atl. 853. And it was held in the case last cited that enlarged photographic copies of the disputed signature and of the signatures with which the comparison was made, were properly used, the court saying that characteristics of one's hand writing may be brought out and made clear by the aid of a photograph or magnifying glass, which would not be discernible by the naked eye. It is said in a well known work on circumstantial evidence, that "it has not infrequently happened that a question of doubt as to the identity of the defendant has been settled by the discovery on his person of permanent marks which were known to be on the person of the guilty party." Will's Cir. Ev. 190. It has recently been held by a court of high standing, upon historical and authoritative examination of the question, that a comparison of finger prints, as shown by photographs of finger-print impressions, may be made by witnesses skilled in the art, for the purpose of identifying one accused of crime. *People* v. *Jennings,* 252 Ill. 534, 96 N. E. 1077, 43 L. R. A. (N. S.) 1206. And in another case of similar holding, it is said: "Signatures have been accepted as evidence of identity as long as they have been used. The fact of the individuality of the corrugations of the skin on the fingers of the human hand is now so generally recognized as to require very little, if any, evidence of it, although it seems to be still the practice to offer some expert evidence on the point. A finger print is therefore in reality an unforgeable signature. That is now recognized in a large part of the world, and in some parts has, I think, been recognized for many centuries. It is certainly now generally recognized in England and other parts of the British Dominions." *Parker* v. *Rex,* 14 C. L. R. (Austr.) 681. In a case against physicians for malpractice, the plaintiff offered in evidence an X-ray photograph of his injured leg, taken after his injuries has been treated by the defendants. Objection thereto was made on the ground that a sufficient foundation had not been laid, and the photograph was excluded. Before the offer was made, a physician, who was an expert witness for the plaintiff, had testified that he had ex-

amined the injured leg by means of the X-ray, after it had been treated by the defendants, and that the photograph offered in evidence was a true representation of the position, location, and condition of the bones of the injured leg, as they were at the time he made the examination. Two other physicians, witnesses for the plaintiff, gave testimony to the same effect, save that one of them ascertained the position, location, and condition of the bones by manipulation, while the means of the other to ascertain such facts did not appear. The court said that in view of this testimony, it was not necessary to go into the question of the competency of the person who took the photograph, the condition of the apparatus by means of which it was taken, nor the circumstances under which it was taken; that maps, photographs, drawings, and models, are admissible in evidence when it is shown that they fairly represent the object or objects under investigation, and there is no good reason why the same rule should not apply to X-ray photographs. *Carlson* v. *Benton,* 66 Neb. 486, 92 N. W. 600, 1 Ann. Cas. 159.

On the foregoing authorities, we think it clear that as the evidence in the case then stood, the evidence offered was admissible for the purpose for which it was offered, namely, of verifying "Plaintiff's Exhibit 1," and its exclusion was error.

III. The question raised by this exception is in legal effect the same as that raised by exception I, and nothing need be added to what is there said.

IV. Dr. Aldrich, mentioned above as called by the plaintiff, was also called as a witness by the defendant, and as such testified in his examination in chief that exhibit 4, it being one of the X-ray photographs taken by him of the plaintiff's right wrist and hand, shows that a small scale of the styloid process of the ulna was detached by a rupture of the internal lateral ligament; that this is the only fracture shown by the picture; that by "rupture of the internal lateral ligament," he meant a "sprained wrist." He further testified that the X-ray photographs taken by him of her wrist do not show a Colles' fracture, nor any fracture of the radius. On being asked whether the epiphyseal line is shown in the photographs he then had, answered, "It shows on one." Then being asked whether it shows on No. 5, answered, that in ordinary daylight it is very hard to tell, but "should say there was a slight trace of the epiphyseal line." In cross-examination the witness testified responsively

to questions, that he had taken some fifty-six dozen of X-ray pictures since early in May; that (other than those taken of plaintiff's wrist and hand) none of them were present, they being at his home in Brattleboro; that he could not tell exactly, but perhaps approximately twenty or thirty of them had been of radii. Being asked if he would produce them, answered, "If the court so instructs." In answer to the question whether he had any photograph in his possession showing the epiphyseal line with the X-ray process, he said he could not say without looking through the plates. He was then asked if he would produce an X-ray plate which he had in his possession, taken by him of a radius, showing the epiphyseal line, and answered, "If the court so orders." The court stated that the plates made by the witness under plaintiff's direction were in the case, and were proper evidence of whatever is shown by them; but refused to order the witness to produce the other pictures called for, noting an exception for the plaintiff. The refusal of the court to order the production of any X-ray plates not connected in any way with, or relating to, matters in the case on trial, was not error. *In re Barney's Will,* cited above. They were wholly collateral to the issue, and the plaintiff was bound by the answers of the witness concerning them, or what is shown by them. *Lewis v. Baker,* 55 Vt. 21; *Gregg* v. *Willis,* 71 Vt. 313, 45 Atl. 229; *Comstock's Admr.* v. *Jacobs,* 84 Vt. 277, 78 Atl. 1017, Ann. Cas. 1913 A, 679.

V. Dr. Aldrich and other expert medical witnesses called by defendant, testified in effect that the X-ray plates Nos. 2, 3, 4, and 5, show the epiphyseal line. In rebuttal the plaintiff showed by Dr. Carpenter that on the preceding day he was requested by plaintiff's attorneys to take an X-ray photograph of a pair of normal wrists, and that he had done so. The plaintiff then offered the X-ray photograph so taken, for the purpose (1) of rebutting the defendant's evidence that the radii shown by the X-ray plates in evidence, are normal; (2) of rebutting the testimony given in defence that the epiphyseal line appears on the X-ray plates (in the case) of the radii; and (3) of showing normal radii, the condition and appearance of normal radii, to rebut the testimony of defendant's witnesses that the radii shown by the X-ray plates in evidence, show normal conditions. The offer was excluded and exception noted. This ruling was not erroneous for two reasons, if not more: (a) The receipt of

the photograph offered would have raised many collateral and immaterial issues, such as whether the wrists there represented were in fact normal; whether the age of the person whose wrists were shown was such as to make his or her wrists fairly and reasonably similar to the normal wrists of the plaintiff; whether the photograph was taken in a manner fairly to represent the wrists of the person in all respects material to the purposes for which it was offered, etc. On all the questions so raised, evidence would have been admissible, and thereby numerous immaterial collateral issues would follow, bearing no relevancy to any question before the trial court. *In re Barney's Will,* cited above. (b) The X-ray photograph offered was the result of an experiment entirely outside the case. This photograph was admissible only in the discretion of the trial court, and the wisdom of its exclusion is obvious from the immaterial collateral issues likely to arise if it were admitted. *Ide* v. *Boston & Maine R. R.,* 83 Vt. 66, 74 Atl. 401; *Thompson* v. *Columbian Nat. Life Ins. Co.,* (Me.) 95 Atl. 229. See *Hardwick Savings Bank and Tr. Co.* v. *Drenan,* 72 Vt. 438, 48 Atl. 645.

VI. The plaintiff made requests for additional findings of fact, and took exceptions to findings made. But inasmuch as a new trial is granted because of error in excluding evidence, the exceptions to the findings of fact become immaterial.

*Judgment reversed and cause remanded.*