ALICE LOOMIS, b. n. f. *v.* LOUIS ABELSON.
GERALD LOOMIS, b. n. f. *v.* LOUIS ABELSON.
*(Two Cases)*

November Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed January 19, 1929.

460

*Jones & Jones* for the defendant.

*Fenton, Wing & Morse* for the plaintiffs.

POWERS, J.   These tort actions, which grow out of an automobile collision, were tried together.   The plaintiffs are minors and bring suit *per prochein ami.*   Verdicts were returned below for the plaintiffs, and the defendant excepted.   The evidence at the trial was sharply conflicting, especially on the question of liability, but the following facts were fairly within its range.

The accident occurred in the early evening of August 23, 1927.   It was then dark and raining.   Both of the cars involved had their lights on.   The highway, which was the main road from Castleton Corners to Hubbardton, was wide, straight, and smooth.   Just at nightfall of the day named, Mrs. Hurlbut, the grandmother of the plaintiffs, by whom both were employed, and who ran a boarding house at Lake Bomoseen, directed the plaintiff Alice Loomis to go to the Corey store for some groceries, and at the same time she directed the plaintiff Gerald Loomis to take her Ford car and drive Alice up to the store on this errand.   This was done.   As the plaintiffs were returning, they met and collided with a Chevrolet car driven by the defendant, and then suffered the injuries for which they have

sued. Gerald saw the approaching car and noticed that it was "crowding the road," meaning apparently that it was working over onto his side of the road. To avoid a collision, he edged the Ford over to his right—so far, indeed, that it grazed a stump standing on that side of the road, well out of the traveled part. In spite of this, the Chevrolet ran into the Ford, tipped it over, and injured its occupants. It is quite obvious that the collision was inexcusable. One of the drivers or both were at fault. There is no use of our trying to sift or reconcile the widely divergent testimony regarding the causes of the accident. Each driver threw all blame on the other. The jury accepted the plaintiffs' version of the matter, and it is enough for us to say that the evidence was legally sufficient to warrant the verdicts.

██ Gerald Loomis testified as a witness. He said that before the accident he had been driving about twenty or twenty-five miles an hour; that he slowed down as he was about to meet the defendant's car so that at the moment of the collision he was going at a speed of not over fifteen miles an hour. In cross-examining him, counsel for the defendant drew from him the statement that he had never driven this Ford fast or over twenty-five miles an hour. Later in the trial, for the purposes of impeachment, the defendant offered to show by a State motor vehicle inspector that on a previous occasion he stopped Gerald when he was driving this car at a speed in excess of thirty miles an hour. This offer was excluded, and the defendant excepted. The ruling was clearly right. That Gerald drove too fast on some previous occasion was no evidence that he was driving too fast at his time. *Nones* v. *Northouse*, 46 Vt. 587, 593; *Ronan* v. *Turnbull Co.*, 99 Vt. 280, 290, 131 Atl. 788. The testimony offered was irrelevant and inadmissible and properly rejected for impeachment purposes. *Comstock's Admr.* v. *Jacobs*, 84 Vt. 277, 283, 78 Atl. 1017, Ann. Cas. 1913A, 679, and cases cited; *Davis* v. *Dunn*, 90 Vt. 253, 261, 98 Atl. 81, Ann. Cas. 1918D, 994; *Niebyski* v. *Welcome*, 93 Vt. 418, 421, 108 Atl. 341.

██ The defendant seasonably requested the court to instruct the jury that the plaintiffs were engaged in a joint enterprise, and that any negligence on Gerald's part would be imputed to Alice. This, the court declined to do, and charged, in effect, that the latter was a mere passenger, to whom the former's negligence could not be imputed. The defendant excepted, but

we find no error in the ruling or charge. The doctrine of joint enterprise is founded upon the theory of agency. It involves as a necessary element such a relation between the person at fault and the one sought to be charged therewith as to make each the agent of the other. *Boyden* v. *Fitchburg R. R. Co.*, 72 Vt. 89, 91, 47 Atl. 409; *Wentworth* v. *Waterbury*, 90 Vt. 60, 62, 96 Atl. 334; *Landry* v. *Hubert*, 100 Vt. 268, 274, 137 Atl. 97. Such a relation did not here exist. These plaintiffs, to be sure, were co-servants of a common master; but this is not enough. *Simpson* v. *Wells*, 292 Mo. 301, 237 S. W. 520, 526. They were engaged in an enterprise which had a single object; but this is not enough. *Bowley* v. *Duca*, 80 N. H. 548, 120 Atl. 74, 75. As between themselves, there was no joint object. Their duties were separate, specific, and exclusive. Alice had nothing whatever to do with driving the car; Gerald had nothing whatever to do with purchasing the groceries. Neither could direct or control the other in the discharge of his or her duty. Without this, there can be no joint enterprise within the meaning of the law. *McAndrews* v. *Leonard*, 99 Vt. 512, 524, 134 Atl. 710; *Landry* v. *Hubert, supra; Robison* v. *Oregon-Wash. R. & N. Co.*, 90 Or. 490, 176 Pac. 594, 600; *Pusey* v. *Atlantic C. L. R. R. Co.*, 181 N. C. 137, 106 S. E. 452, 453; *Coleman* v. *Bent*, 100 Conn. 527, 124 Atl. 224, 226; *Bowley* v. *Duca, supra.*

The views herein expressed are supported by the following cases, in which it was held that there was no joint enterprise engaged in by the parties named: The motorman and conductor of a trolley car. *McCrotty* v. *Baltimore & Ohio S. W. R. R. Co.*, 229 Ill. App. 117, 120; *Ford* v. *Hine Bros. Co.*, 237 Ill. 463, 86 N. E. 1051. The driver of an ice wagon and a co-employee who rode with him and delivered the ice. *Baxter* v. *St. Louis Transit Co.*, 103 Mo. App. 597, 78 S. W. 70, 73. A truck driver and a co-employee engaged in delivering freight to a railroad. *Rawie* v. *Chicago, B. & Q. R. R. Co.*, 310 Mo. 72, 274 S. W. 1031, 1035. The driver of an ice cream truck and an employee who made the deliveries to the customers of the common master. *Stoker* v. *Tri-City R. R. Co.*, 182 Iowa, 1090, 165 N. W. 30, 32, L. R. A. 1918F, 515. The driver of a fire truck and firemen riding thereon. *Brockstedt* v. *Meltzer* (N. J. Err. & App.), 111 Atl. 812, 813; *Burleigh* v. *St. Louis Transit Co.*, 124 Mo. App. 724, 102 S. W. 621, 623; *Donoghue* v. *Holyoke St.*

*Ry. Co.,* 246 Mass. 485, 141 N. E. 278, 280. The driver of an automobile and policemen riding therein. *Denver Tramway Co.* v. *Orbach,* 64 Col. 511, 172 Pac. 1063, 1064; *Hogan* v. *Fleming,* 218 Mo. App. 172, 265 S. W. 875, 880. The driver of an automobile and a nurse employed by the same institution. *Van Ingen* v. *Jewish Hospital,* 182 App. Div. 10, 169 N. Y. S. 412, 415. The driver of a delivery car and a co-employee who made the deliveries. *Bryant* v. *Pacific Elec. Ry. Co.,* 174 Cal. 737, 164 Pac. 385, 386.

██ The defendant is not in a position to complain of the charge wherein the court instructed the jury to effect that if the defendant was on the wrong side of the road he was guilty of negligence. He took no exception to this instruction, so we give it no consideration. He relies much upon the claim that the Ford was traveling too fast, and insists that as matter of law the record shows that Gerald was to blame for the collision. The record does not sustain him. He ignores the evidence in behalf of the plaintiffs. He calls attention to the distance covered by the Ford after the collision and insists it is evidence of excessive speed. Ordinarily, such distance could be relied upon as evidence of speed, *McAndrews* v. *Leonard, supra,* but here, according to the undisputed evidence, the Ford proceeded after the collision without a driver, or at least with an unconscious driver—a fact that would or might materially affect the distance traveled. In no view of the evidence can it be said that either Gerald's or the defendant's negligence was so clearly established as to present a question for the court and not the jury. This being so, we cannot interfere with the verdict without violating established rules and policies. The motion to set aside the verdict was passed upon and the verdict approved by the court that heard and observed the witnesses, and was in all respects better qualified to pass upon it than is this Court. There is nothing in the record that would justify us in treating the case as exceptional, and we therefore decline to interfere. *In re Wood's Will,* 95 Vt. 407, 409, 115 Atl. 231; *Platt* v. *Shields & Conant,* 96 Vt. 257, 270, 119 Atl. 520.

The exception to the granting of a certified execution is predicated upon a misapprehension of fact. The court did not fail to find the essential facts, on which, alone, such an execution can lawfully be granted. Such findings were made and filed at

the time the motion was granted. They are before us, and are entirely adequate, as was the evidence on which they were based.

*Judgment affirmed.*