## GILMORE et al. v. GRASS.
### No. 812.

Circuit Court of Appeals, Tenth Circuit.
Dec. 16, 1933.

George F. Short, of Oklahoma City, Okl. (John W. Blood, of Wichita, Kan., and Charles Hill Johns, of Oklahoma City, Okl., on the brief), for appellants.

Frederic S. Anderson, of Oklahoma City, Okl. (Gomer Smith and A. J. Taft, both of Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This appeal brings here for review the correctness of the trial court's action in refusing to submit to the jury the question of imputed negligence.

Anna Grass, surviving widow of Lee Grass, deceased, on behalf of herself and her five minor children, instituted the suit to recover damages for the wrongful death of her husband resulting from the collision of an automobile in which he was riding with a bus owned by Southern Kansas Stage Lines Company and operated by Lee Gilmore, its agent. For convenience, the parties will be denominated as they were in the trial court. The jury returned a verdict in the following language: "We, the jury in the above-entitled case, duly impaneled and sworn, upon our oaths, find for the plaintiff, and assess her damages at ten thousand ($10,000.00) dollars, on the grounds that both drivers were guilty of contributory negligence and from the preponderance of the evidence said negligence caused the death of plaintiff's husband."

Judgment was rendered for plaintiff. Defendants appealed.

James D. De Friese had sold an automobile to Blackburn and desired to repossess it because of default in payment. Roy McMahon was a brother-in-law of De Friese and worked for him at a garage. On the Sunday morning in question De Friese directed McMahon to repossess the Blackburn car. Pursuant to such direction and using an automobile owned by De Friese, McMahon started to the Blackburn residence to get the car. Masters accompanied him for the purpose of showing him where Blackburn lived and Grass went along to drive the Blackburn car back to the garage. Grass, a carpenter and electrician, was not employed by De Friese and was not to receive compensation for driving the car, it being entirely an accommodation on his part. McMahon was driving the car in which the three of them were riding and had complete charge of it at the time of the accident. Grass was riding in the front seat with him and Masters occupied the rear seat. They traveled south on Lincoln boulevard in Oklahoma county, Okl. The bus came north on the boulevard. McMahon turned to the left into Thirty-Sixth street. The bus and the car

collided, resulting in the death of Grass. There is a direct conflict in the testimony with respect to the negligence of the respective drivers. It is unnecessary to detail the incidents attending and immediately preceding the collision because the jury found that both drivers were negligent, and that finding is not challenged here.

Defendants tendered a requested instruction, as follows: "You are instructed that if you find in the evidence in this case that the deceased and the driver of the Ford car, in which he was a passenger, were engaged in joint enterprises, and that the driver of the Ford car was guilty of negligence, then such negligence would be imputable to deceased, and if you find that the negligence of the driver of the Ford car contributed to, or was the approximate cause of the collision, which resulted in the death of the deceased the verdict should be for the defendant."

The court refused it and stated to the jury that the evidence did not justify the submission of that issue.

██ Although McMahon, Grass, and Masters were engaged in an undertaking having for its common purpose the repossession of the Blackburn car and its return to the garage, each had a separate and distinct duty to perform quite apart from the others. No one of them had the right to direct or control the others. McMahon was driving and in complete control of the automobile at the time of the fatal accident. Grass had no control over it; he had no right to direct the manner of its operation; he had no voice in that matter; there was no community of interest between them with respect to the manner of its operation as an agency used in connection with the repossession of the Blackburn automobile. They were not partners in any sense. The relation of master and servant or that of principal and agent did not exist between them.

While the doctrine has sustained certain facets, it is generally held to apply in a case of this kind only where the parties are engaged in a joint enterprise in which they have a community of interest with respect to the manner in which the operation of the automobile is used as an agency and where they each have some control over the manner of its operation. There must be some relation between them, such as partnership, principal and agent, master and servant, or some other kindred identity in order to constitute such community of enterprise and joint control over the operation of the automobile.

The case of Little v. Hackett, 116 U. S. 366, 6 S. Ct. 391, 397, 29 L. Ed. 652, is an early and leading one. There plaintiff hired a public hackney coach with a driver furnished. He could direct the driver where to go, but otherwise he had no control over the operation of the coach, that being entirely with the driver. Plaintiff suffered an injury consequent upon concurring negligence of those operating a train and the driver of the coach. The court held that the negligence of the driver could not be imputed to plaintiff in the absence of some power of control or direction on his part over the operation of the vehicle, either through the relationship of master and servant or otherwise. It was said: "Those on a hack do not become responsible for the negligence of the driver if they exercise no control over him further than to indicate the route they wish to travel or the places to which they wish to go. If he is their agent, so that his negligence can be imputed to them to prevent their recovery against a third party, he must be their agent in all other respects so far as the management of the carriage is concerned, and responsibility to third parties would attach to them for injuries caused by his negligence in the course of his employment. But, as we have already stated, responsibility cannot, within any recognized rules of law, be fastened upon one who has in no way interfered with and controlled in the matter causing the injury. From the simple fact of hiring the carriage or riding in it no such liability can arise. The party hiring or riding must in some way have co-operated in producing the injury complained of before he incurs any liability for it."

In Chicago, R. I. & P. Ry. Co. v. Fanning (C. C. A.) 42 F.(2d) 799, 803, plaintiff and her husband, while en route to a dance in an automobile driven by the husband, drove into a ditch carelessly and negligently maintained by the railroad company. It was contended that the trial court erred in refusing to submit to the jury the question of the husband's negligence in the operation of the automobile and its imputation to the wife. This court speaking through Judge Lewis, said:

"Specifications 3 and 4 cover in part the same subject. The first one relates to the claimed negligence of appellant's husband in operating the automobile, and the second one is on the theory that the husband and wife were using the automobile in a joint enterprise for their mutual pleasure, and it again couples therewith the husband's claimed negligence in the operation of the car. Each seeks to attribute the claimed negligence of the husband to the wife as a bar. Neither

proposition can be supported. In Berry on the Law of Automobiles (4th Ed.) § 550, which follows a discussion of the rule as to occupants of cars being liable for the driver's negligence, we find this:

" 'The rule that the negligence of the operator is not imputable to a guest or passenger riding in the automobile, applies as between a husband, who is driving, and his wife, who is riding with him.'

"Whether the occupant be a stranger to the driver or a member of the driver's family, the negligent acts of the driver are in neither case imputable to the passenger unless the relation between them is such as to entitle the passenger to give directions as to the operation of the automobile,—the relation of principal and agent or master and servant."

The facts in St. Louis & S. F. Ry. Co. v. Bell, 58 Okl. 84, 159 P. 336, 339, L. R. A. 1917A, 543, were that Powell was the owner of an automobile. He and his wife had two lady friends visiting in their home at Oklahoma City. A young man named Du Boise was engaged in teaching Powell to drive the car. On the day in question, Powell and his wife and their two guests planned an automobile trip into the country for the purpose of purchasing some chickens and eggs. Powell learned about noon that it would be impossible for him to go and thereupon arranged with Du Boise to drive the car on the trip. Upon reaching a garage and while obtaining gasoline, Du Boise suggested to Mrs. Powell that Bell be invited to accompany them. The invitation was extended and accepted. Du Boise and Mrs. Powell occupied the front seat. Bell and the two lady guests rode in the rear. After crossing the tracks of the railway company at Spencer, and while descending the south side of its roadbed the automobile fell into a hole in the highway negligently permitted to be and remain there, overturned, and killed Bell. His surviving widow sued in behalf of herself and her minor child to recover damages. The company alleged, among other things, that the death of deceased was due to the negligence of the driver and sought to impute such negligence to Bell. The Supreme Court sustained the action of the trial court in failing to submit that question. The court quoted with approval the following language contained in the case of Anthony v. Kiefner, 96 Kan. 194, 150 P. 524, L. R. A. 1915F, 876, Ann. Cas. 1916E, 264: " 'The doctrine of imputable negligence, except when countenanced by statute, is a fiction of the law which finds small favor with the courts, and has been very infrequently applied in our own.' "

It then said:

"Assuming that the trip was a 'joy ride,' as contended, it was not a joint or common undertaking.

"In Atwood v. Utah Light & Ry. Co., 44 Utah, 366, 140 P. 137, the court, quoting approvingly from Cotton v. Willmar & S. F. Ry. Co., 99 Minn. 366, 109 N. W. 835, 8 L. R. A. (N. S.) 643, 116 Am. St. Rep. 422, 9 Ann. Cas. 935, said:

" 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management.'

"It follows that, as the negligence of the driver cannot be imputed to the deceased, the court did right to decide that question on the undisputed facts as a matter of law, and that the question so decided was not a question of contributory negligence required to be left to the jury as a question of fact by Const. art. 23, § 6, as contended by defendant."

The question came before that court again in Hasty v. Pittsburg County Ry. Co., 112 Okl. 144, 240 P. 1056, 1058. There, Hasty and his wife left their home in McAlester riding in the front seat of an automobile owned and driven by him. Soon afterwards, and at the suggestion of Mrs. Hasty, Mrs. Bell and her three children were invited to join them. They did so and occupied the rear seat. Upon attempting to cross Electric avenue the automobile collided with a westbound electric car owned by the defendant company, resulting in plaintiff's injuries giving rise to the suit. The trial court instructed the jury concerning the duties of a driver of an automobile in approaching a railway crossing, stating in connection therewith that, if Hasty were negligent such negligence could in certain circumstances be imputed to plaintiff. The court held that the instruction was erroneous because the facts did not justify submitting that question to the jury. In doing so and after referring to the Bell Case, the court said: "The relationship referred to in the law, whence arises imputable negligence, involves a legal duty, not a moral one. This is apparent from principal and agent or master and servant. Whether plaintiff and her husband were engaged in a joint enterprise, therefore, depends upon whether the relationship between them at the time of the accident was such that the plaintiff had the

legal right and authority and therefore the correlative duty and responsibility, to direct the driving. For example, each partner is the agent of the partnership within the scope of its business, the relation being expressly or impliedly contractual. There are joint enterprises or ventures that are not partnerships in the legal sense, and in which those engaged are not its implied agents as, for instance, so-called mining partnerships in this state. A joint enterprise ordinarily contemplates business or profit as its object, though we cannot so limit the term. In any event, we think imputable negligence arising from a joint enterprise is analogous to that arising from agency. The record does not show a contractual relation between plaintiff and her husband whereby anything more than a moral obligation existed between them at the time of the accident, for the acts of each other. Plaintiff had no control of, or right to control, the driving."

In Loomis v. Abelson, 101 Vt. 459, 144 A. 378, 379, Alice Loomis and Gerald Loomis, sister and brother, were employed by their grandmother, who conducted a boarding house. The grandmother directed Alice to go to a specified store and purchase some groceries and she directed Gerald to drive Alice to the store in her automobile. The accident, resulting in injury to Alice and provoking the suit, occurred on the return from the store. The defendant requested the court to instruct the jury that Alice and Gerald were engaged in a joint enterprise and that negligence on Gerald's part could be imputed to Alice. The request was refused and the action in doing so was approved. The court stated the relationship necessary for the application of the doctrine as follows: "The doctrine of joint enterprise is founded upon the theory of agency. It involves as a necessary element such a relation between the person at fault and the one sought to be charged therewith as to make each the agent of the other. Boyden v. Fitchburg R. Co., 72 Vt. 89, 91, 47 A. 409; Wentworth v. Waterbury, 90 Vt. 60, 62, 96 A. 334; Landry v. Hubert, 100 Vt. 268, 274, 137 A. 97. Such a relation did not here exist. These plaintiffs, to be sure, were co-servants of a common master; but this is not enough. Simpson v. Wells, 292 Mo. 301, 237 S. W. 520, 526. They were engaged in an enterprise which had a single object; but this is not enough. Bowley v. Duca, 80 N. H. 548, 120 A. 74, 75. As between themselves, there was no joint object. Their duties were separate, specific, and exclusive. Alice had nothing whatever to do with driving the car;

Gerald had nothing whatever to do with purchasing the groceries. Neither could direct or control the other in the discharge of his or her duty. Without this, there can be no joint enterprise within the meaning of the law."

It was held that the rule did not apply to the facts in Wessling v. Southern Pac. Ry. Co., 116 Cal. App. 455, 3 P.(2d) 25, 26. Two brothers were ministers. One resided at Lodi and the other at Richmond. The one living at Lodi visited his brother in Richmond and while there they collaborated in the preparation of certain tracts for use in an approaching convention of Sunday school teachers. They started to the post office in an automobile owned by the one residing in Richmond and his mother, for the purpose of mailing the tracts. The resident of Richmond drove the car and selected the route. They were struck by a train at Barrett avenue, resulting in the death of the visiting brother. His mother instituted the suit to recover damages for his wrongful death. The court said: "The true rule in this state, as we understand it, is that where there is nothing in common between the passenger and the driver of the vehicle except a common destination and a common purpose in going there the negligence of the driver is not to be imputed to the passenger, but the passenger must control or have some legal right to control the actions of the driver in the operation of the vehicle."

A review of the many other cases denying application of the rule would extend this discussion unduly. Without such a review, we direct attention to Union Pacific Ry. Co. v. Lapsley (C. C. A.) 51 F. 174, 16 L. R. A. 800; Southern Pac. Ry. Co. v. Wright (C. C. A.) 248 F. 261; Clark v. Remington (C. C. A.) 55 F.(2d) 48; Stoker v. Tri-City Ry. Co., 182 Iowa, 1090, 165 N. W. 30, L. R. A. 1918F, 515; Kepler v. Chicago, St. P., M. & O. Ry. Co., 111 Neb. 273, 196 N. W. 161; Rosenstrom v. North Bend Stage Line, 154 Wash. 57, 280 P. 932; Huber v. Scott, 122 Cal. App. 334, 10 P.(2d) 150.

The doctrine, finding reluctant favor in the courts both national and state, is inapplicable in this case because the essential facts establishing a joint enterprise with a community of interest in its object and purpose and a requisite voice on the part of each in the manner of operating the automobile used in connection therewith are absent. The court correctly refused the requested instruction.

The judgment is affirmed.