## BUSS v. ROBISON et al.
### No. 6249.

Court of Civil Appeals of Texas. Amarillo.
Nov. 17, 1952.

Rehearing Denied Dec. 22, 1952.

Brundidge, Fountain, Elliott & Bateman, Dallas, Leigh Fischer, Borger, for appellant.

Stone & Stone, Amarillo, Dally & Alexander, Borger, for appellees.

PITTS, Chief Justice.

This suit for damages was filed on June 28, 1951, against appellant, John Buss, by appellees, Jessie Marie Robison, a feme sole, individually and as next friend of and for the use and benefit of her two minor children, Leonard Verlon Robison and Francis Lazette Robison, and for the use and benefit of Traders & General Insurance Company as well as for the use and benefit of Charlie Robison and Avis Robison. Appellees predicated their claim for damages upon alleged wrongful acts of negligence of appellant which resulted in the death of Leonard Clovis Robison, who was the husband of Jessie Marie Robison, the father of the two named minors and the son of Charlie and Avis Robison. Appellees further pleaded that the deceased and John W. Osborn were employed by Shepmons Builders Supply Company when on May 21, 1949, they were engaged in the course of their employment and were riding in a 1948 panel truck owned by their employer but was being operated by Osborn when it collided with a Chevrolet coupe automobile owned and operated by appellant, resulting in the death of Leonard Clovis Robison who was then 25 years of age. It was further alleged that Traders & General Insurance Company assumed liability in connection with the claim for the damages on July 11, 1949, under the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq. This suit was filed on behalf of the said Insurance Company together with the other appellees herein named. The case was tried to a jury on February 13, 1952, and judgment was rendered on its verdict on March 11, 1952, for appellees in the total sum of $20,000 from which judgment appellant has perfected its appeal. This controversy grew out of the same collision as that presented and discussed by this court in the case of Buss v. Shepherd, 240 S.W.2d 382.

Many issues were presented to the jury, in answer to some of which it found both appellant and Osborn guilty of negligence which proximately caused the collision that resulted in Robison's death. The jury likewise found that the deceased, Robison, was asleep immediately prior to and at the time of the collision but that such did not constitute negligence on his part. The jury further found that the deceased and John Osborn, who was driver of the panel truck at the time and place in question, were not engaged in a joint enterprise at the time and place of the collision. Appellant contends there was no evidence to support the latter finding of the jury; that, on the contrary, the evidence conclusively established the fact that the deceased and Osborn were engaged in a joint enterprise at the time and place in question; that the trial court erred in its refusal to set aside and disregard the said finding on the said grounds alleged by appellant and hold, as a matter of law, that the deceased and Osborn were engaged in a joint enterprise at the time and place of the collision and that the negligence of Osborn was therefore imputed to the deceased.

The special issue in question was submitted to the jury in the following language, together with a definition of "joint enterprise" given:

"Do you find from a preponderance of the evidence that the deceased, Leonard Clovis Robison, and the driver

of the panel truck in question, John W. Osborn, were engaged in a joint enterprise at the time of the collision in question, as the term 'joint enterprise' has hereinbefore been defined to you?

"Answer 'Yes' or 'No'.

"The term 'Joint Enterprise', as used herein, means that the occupants of the panel truck in question are supposed to be on a joint expedition where they not only had a joint interest in the object and purpose of the enterprise, and joint possession of the truck, but also an equal right, expressed or implied, to direct or control the conduct of each other in the operation of the panel truck in question."

Appellant did not object to the submission of the issue or the definition given.

■ After the jury verdict had been received and before the trial court had rendered its judgment, appellant on February 26, 1952, filed its motion urging the trial court to disregard and set aside the negative answer of the jury to the foregoing special issue and hold, as a matter of law, that the deceased and Osborn were engaged in a joint enterprise on the occasion in question for the alleged reasons that the uncontroverted evidence showed the said parties at the said time had a joint interest in the object and purpose of their trip, had joint possession of the panel truck being used by them, and each of them had an equal right, expressed or implied, to direct or control the conduct of the other in the operation of the panel truck. In order to prevail in the question here presented, appellant must establish conclusively, and therefore as a matter of law, that the said employees had a joint interest in the object and purpose of their trip, had joint possession of the panel truck and each of them had an equal right, expressed or implied, to direct or control the conduct of the other in the operation of the said truck. The failure of appellant to establish any one or more of these elements of joint enterprise will defeat the contention here made by appellant. If the evidence presented raised a fact question about either of these elements, the jury finding and the trial court's judgment based thereon must be sustained in so far as they apply to the issue in question. El Paso Electric Co. v. Leeper, Tex.Com. App., 60 S.W.2d 187; and Ford Motor Co. v. Maddin, 124 Tex. 131, 76 S.W.2d 474.

■ ■ In examining the evidence, we are not concerned about its preponderance but only about its probative force or its sufficiency to raise an issue. In determining its sufficiency, we must give credence only to the evidence and circumstances, if any there be, favorable to the question raised and disregard all such to the contrary.

Orville Shepherd, a member of the Shepmons Builders Supply partnership, and the employer who directed the work of Osborn and the deceased, Robison, on the occasion in question, testified that their place of business was in Borger, Texas; that he had two jobs for the said two men to do on that occasion; that one of the jobs was a venetian blind job to be performed in Spearman and the other a floor covering job to be performed in Morse; that he instructed Osborn to take Robison to Morse and leave Robison there to do the floor covering job and for Osborn to proceed further on to Spearman with the venetian blinds where Osborn would there hang them and thereafter return to Morse to help Robison finish the floor covering job before they were to return to Borger; that Osborn was driving the panel truck when he and Robison left. The witness further testified later that he instructed Osborn to take Robison to Morse to lay the linoleum and then go on to Spearman, hang the venetian blinds and return to Morse and help finish up the floor covering work before coming back to Borger.

John W. Osborn testified that he was 18 years old at the time of the collision and he and Robison had often worked as a team for Shepmons; that he was driving the panel truck as he and Robison were on their way to do the two jobs given them to do by Mr. Shepherd; that Robison was asleep prior to and at the time of the collision, which occurred before they reached Morse, where Robison was to do the floor covering job; that on the floor cov-

ering work Robison was the boss but that neither of them had any authority over the other in driving the panel truck.

It appears from the evidence that prior to the collision and when it occurred, Robison had left the whole course of their employment for the time being to Osborn and had fallen asleep. Osborn was operating the panel truck under the specific instructions of their employer Shepherd, to deliver Robison to Morse where Robison would do a floor covering job while Osborn would continue on alone to Spearman to hang the venetian blinds. At the time of the collision, the two employees were headed for two separate places some miles apart, under the instructions of their employer, to engage in two separate jobs, neither job being related to the other. Osborn had been directed by their employer to "take" Robison to his job and continue on to a different place where Osborn would perform his separate and different assignment alone. After Osborn finished his assignment, he was directed to return to Morse to help Robison finish the assignment there, assuming of course that Robison would not be through with the floor covering job by the time Osborn returned to Morse. At Morse, only a short distance from the place of the collision, the two employees were to separate. Osborn was directed to proceed to Spearman where he would perform an assignment alone, while Robison was directed to begin and proceed alone with an assignment at Morse. Certainly Robison had no interest in a continuation of the trip from Morse to Spearman or in the job to be performed at Spearman. Neither did Osborn have any interest in the floor covering job at Morse until he had finished his Spearman job and returned to Morse and not even then if Robison had completed the Morse job by the time he returned to Morse. For a time at least the continuity of their alleged "joint interest" was suspended or broken and their duties were separate, specific and exclusive. At no time would Robison have been interested in the Spearman job and Osborn would not have been interested in the Morse job unless and until he returned and found it unfinished.

If such evidence was worthy of belief (and that matter rested wholly within the province of the jury) it could hardly be reasonably assumed that the two employees were engaged in a joint expedition or that they had a joint interest in both of the two separate assignments to be performed at separate places. It could hardly be reasonably assumed that the object of the trip in all of its parts was a common object of both employees. According to the foregoing evidence, it likewise appears that the employer placed Osborn in control of the panel truck, even though the employer may not have objected if Robison had taken charge of the truck and driven it. The employer gave instructions to Osborn and it must be admitted that Osborn would have had exclusive possession and control of the truck after delivering Robison to Morse as he proceeded to Spearman and returned to Morse. According to the instructions given, there would not have been any change of drivers or of possession or control of the truck at any point or place on the entire journey. According to the instructions given and the evidence heard, Robison was not to have possession of the panel truck or to operate it or control it at any place or time of the journey. The instructions for the journey were given to Osborn alone according to Shepherd's testimony. In passing on the issue here presented, we must be governed by the evidence concerning the transaction in question and not what may or may not have happened on some other and different occasion or what may have been customary at some other time.

It is our opinion from an examination of the record that there was sufficient evidence of probative force to raise a negative answer to the issue of joint enterprise as a matter of fact and that appellant has failed to show, as a matter of law, the existence of all of the elements of joint enterprise. We believe the trial court was justified in overruling appellant's motion to disregard and set aside the issue in question. It is also our opinion that there was sufficient evidence of probative force to support the jury finding to the effect that the said employees were not engaged in a

joint enterprise at the time and place of the collision. Our position in the matter is supported by the rules announced and discussed with approval in the following additional cases: Schuhmacher Co. v. Holcomb, Tex.Civ.App., 174 S.W.2d 637, affirmed 142 Tex. 332, 177 S.W.2d 951; Magnolia Petroleum Co. v. Owen, Tex.Civ. App., 101 S.W.2d 354; Straffus v. Barclay, 147 Tex. 600, 219 S.W.2d 65; Loomis v. Abelson, 101 Vt. 459, 144 A. 378; Van Gilder v. Gugel, 220 Wis. 612, 265 N.W. 706, 105 A.L.R. 824; 95 A.L.R. 858.

Appellees cite the case of Ft. Worth & D. C. Ry. Co. v. Mackney, 83 Tex. 410, 18 S.W. 949, in which the court held that when the plaintiff is free from fault, the negligence of his fellow-servant cannot be imputed to him for the benefit of a stranger, whose wrong contributed to the injury, and that where the negligence of a fellow-servant is the sole cause of the injury, he alone is liable, but where it concurs with that of a stranger and plaintiff is free from personal negligence, the stranger is liable. In support of that doctrine the following additional cases are cited: St. Louis Southwestern Ry. Co. of Texas v. Swinney, 34 Tex.Civ.App. 219, 78 S.W. 547; Snelling v. Harper, Tex.Civ.App., 137 S.W.2d 222; Bricker v. Green, 313 Mich. 218, 21 N.W. 2d 105, 163 A.L.R. 697. An examination of these cases reveals a different set of facts in each case from those here presented and the doctrine there proclaimed is the fellow-servant doctrine. Yet the line of reasoning there presented seems sound and logical and may be persuasive in support of a defense to the doctrine of joint enterprise, particularly in a case such as this where the deceased, as a fellow employee, free from negligence, had, for the time being, felt free to relax and leave the purpose and mission of their journey under the exclusive control of his associate and fall asleep, never to wake up because of the concurrent negligence of a stranger and his coworker.

■ Appellant contends that the trial court erred in its refusal to sustain his plea of two years statute of limitation, Vernon's Ann.Civ.St. art. 5526, made against appellees' claim for damages. It must be admitted that the cause of action in favor of the two minor children, ages 5 and 8 years, could not have been barred by the statute of limitation. Texas Utilities Co. v. West, Tex.Civ.App., 59 S.W.2d 459 (writ refused) and other authorities there cited. The record reveals that Leonard Clovis Robison was killed on May 21, 1949, and this suit was filed on June 28, 1951. The parties stipulated that the initial payment of compensation made by appellee Traders & General Insurance Company to appellee Jessie Marie Robison, guardian of the estate of her two minor children herein named, was made by check on July 11, 1949, and that weekly payments have been subsequently made by the said Insurance Company. Documentary evidence reveals that notice of the fatal injury of deceased and the claim for compensation bore the date of July 6, 1949, and the Industrial Accident Board received the same on July 8, 1949. Both the evidence and the stipulation of the parties show the initial payment of compensation was made by the Insurance Company to the beneficiaries of the deceased on July 11, 1949. It must be presumed that the Insurance Company did not assume liability before claims of liability were made to the Industrial Accident Board and there is no evidence showing it assumed liability before the date the initial payment was made. Certainly the Insurance Company assumed liability when it made the initial payment and continued weekly payments subsequently thereafter. In any event according to the record before us this suit was filed less than two years from the date Traders & General Insurance Company assumed liability to pay compensation to the beneficiaries of the deceased.

■ Appellees predicate their right to recover against appellant as a third person upon the provisions of Article 8307, Section 6a, which says:

"Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employé may at his option proceed either at law against that person to recover damages or

against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. If compensation be claimed under this law by the injured employé or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employé in so far as may be necessary and may enforce in the name of the injured employé or of his legal beneficiaries or in its own name and for the joint use and benefit of said employé or beneficiaries and the association the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employé or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employé or his beneficiaries. The association shall not have the right to adjust or compromise such liability against such third person without notice to the injured employé or his beneficiaries and the approval of the board, upon a hearing thereof."

The foregoing statute has been construed by our courts and they have determined when such a claim as the one here under consideration matures and when the statute of limitation begins to run against such a claim. In the case of Freeman v. Federal Underwriters Exchange, Tex.Civ. App., 155 S.W.2d 674, the court held the statute to be constitutional.

In construing said Article in the case of Texas Employers Ins. Ass'n v. Brandon, 126 Tex. 636, 89 S.W.2d 982, 984, the Commission of Appeals said in part:

"There is language in the article above quoted indicating that the right of subrogation arises when compensation is claimed by the injured employee, but a consideration of the article as a whole makes it clear that that right does not mature until the insurer has paid or assumed to pay compensation."

In the case of Texas Employers' Ins. Ass'n v. Texas & P. Ry. Co., Tex.Civ.App., 129 S.W.2d 746, 750, writ dismissed, judgment correct, the court said in part:

"The statute (Art. 8307, sec. 6a, R.S. 1925) makes the insurance carrier an agent or trustee for the injured employee or beneficiary to bring and maintain the action against the negligent third party. The insurance carrier cannot maintain the action either for itself, or in its trust capacity for the employee or beneficiary, until the amount of its liability for workmen's compensation 'has been paid or assumed.' This is so because otherwise there could be no apportionment of the cause of action or amount of recovery thereon as between the insurance carrier in its own right and that of the injured employee or beneficiary represented by it as trustee."

In discussing the said Article in the case of Fidelity Union Casualty Co. v. Texas Power & Light Co., Tex.Civ.App., 35 S.W. 2d 782, 783, writ refused, the court said in part:

"This right of subrogation has existence only in the terms of this statute and it can be enforced only as therein directed.

\* \* \* \* \* \*

"No cause of action, therefore, accrued on the respective claims herein asserted until the final judgment of this court; when the fact, necessary to give the casualty company and Riley an enforceable right, was given the judicial determination contemplated by said statute. As the statute of limitation did not begin to run until the subrogated cause of action for personal injuries accrued, this suit was instituted within the limitation period.

\* \* \* \* \* \*

"On the above authorities we hold that, in any event, the statute of limitation was suspended from the day Riley filed his claim with the Indus-

trial Accident Board to the date of the entry of final judgment in that case, March 22, 1930, and this suspension is fatal to appellee's claim of limitation."

Although appellant earnestly urges us to disregard the foregoing authorities and sustain his claims of limitation, we feel constrained, after considering the record and the authorities carefully, to follow the authorities previously herein cited since they have been examined by the Supreme Court and some of them unconditionally approved. As a result of such it is our opinion that appellees' claim for damages did not accrue until the Insurance Company assumed liability for compensation on July 11, 1949, and this suit was filed on June 28, 1951, less than two years after the claim accrued. We therefore conclude that the trial court properly overruled appellant's plea of limitation. Appellant's points of error are all overruled and the judgment of the trial court is affirmed.