WEAVER *v.* FIRST NATIONAL BANK OF
MEMPHIS, TRUSTEE.

4-8978                                    224 S. W. 2d 813

Opinion delivered December 5, 1949.

*Snowden, Davis, Brown, McCloy & Donalson* and *Rieves & Smith,* for appellant.

*Hale & Foglemen* and *Chandler, Shepherd, Heiskell & Williams,* for appellee.

Ed. F. McFaddin, Justice. This case involves the Menasha Outing Club and the efforts of the majority of the members, to sell the club property, against the wishes of the appellant, now the only objector. The principal question for decision is whether unanimous consent of the members is required to dispose of the property. In order to answer that question and the others, it is necessary to state some of the history of the club and its type of organization, and the manner in which this litigation reaches this court.

## FACTS

First: In 1902 the Menasha Outing Club (hereinafter called "Menasha") was organized. It was and is a club with by-laws and membership certificates. Pertinent sections of the by-laws read as follows:

"Article I. The purposes of this Club are to afford opportunity to its members for healthful recreation and relaxation from business cares and pursuits, and to cultivate gentlemanly intercourse and pleasant social relations.

"Article II. The domicile of the Club shall be in the City of Memphis, Shelby County, Tenn.; its clubhouse on the property of the club in Crittenden County, Arkansas, or such place or places as the members shall from time to time select.

. . .

"Article VIII, Section 1. There shall be an Executive Committee, consisting of seven. The first three shall be the three officers of the Club, namely, President, Vice-President, and Secretary & Treasurer. The remaining four shall be elected at the annual meeting of the Club.

The Executive Committee shall have the power to accept the resignation of any officer of the Club, or member of said committee, and to fill all vacancies that may occur from any cause in the offices or membership of the committee.

.   .   .

"Article XI, Section 1.   A certificate of membership shall be issued to each and every member of the Club by the President and Secretary thereof, and said certificate shall entitle the holder to every privilege of the Club, and to rights of ownership in its properties and assets, subject to the provisions hereinafter stated.

"Article XI, Section 2.   Any member shall have the right to dispose of his certificate of membership to anyone to whom he may elect to sell the same, provided said party is not objectionable to the Club.   .   .   .   In the event of a sale and transfer of the certificate of membership hereunder, it shall carry with it all the rights and privileges of the original owner; provided always, however, that before any membership in the Club shall be sold to any person who may be a non-member, the Club shall have the first right and option to buy said certificate to membership upon the same terms upon which said certificate is to be disposed of to any non-member.

"Article XI, Section 3.   Any member of the Club shall have the right to devise or bequeath his certificate of membership to any person he may desire, subject to the qualification stated in Section 2 hereinbefore, and should any member die without making such disposition of his certificate, then it shall become a part of his estate, to be distributed as the law directs, subject to the provisions of Clause 2 hereinabove, giving the Club the option to buy the same.

.   .   .

"Article XI, Section 6.   It is further understood and agreed by and between all parties hereto, that the holder of this certificate, in consideration of its issuance to him, shall and does hereby bind himself, his heirs, representatives and assigns, to forever release and forego all right

to a partition or division of the Club property by process of law, or otherwise, in the courts of Arkansas, or elsewhere, unless the same shall be so directed by the Club, and any assignee of this certificate shall take it with this understanding and agreement upon his part.

· · ·

"Article XV. Ten members of the Club present shall constitute a quorum for the purpose of doing any business for which the meeting is called. No member shall be entitled to hold more than one certificate of membership.

"Article XVI. These by-laws may be amended at any meeting of the Club called for that purpose, or at the annual meeting by a majority vote of the membership present.

"Article XVII. All called meetings of the membership of the Club shall be made by the Secretary upon the authority of a majority of the Executive Committee or ten members calling for same by written request to the Secretary, and five days' notice shall be given of all such called meetings."

Second: Being desirous of owning real estate, and evidently realizing that title would have to be held by a trustee Menasha in 1902 duly designated the Memphis Trust Company as such trustee. The declaration of trust reads in part:

"It is further provided that the trust relation hereby formed and made, may be dissolved:

"First: By the liquidation, insolvency and failure of the Memphis Trust Company.

"Second: By a resolution duly passed by a majority in attendance of the members of the said Menasha Outing Club, at any regular meeting of the members of said Club, or at any special meeting called for that purpose, and the said resolution so passed shall be signed by the President of the said Club and presented to the proper officer or officers of the Memphis Trust Company, and said resolution so presented, shall be its au-

thority for making a transfer any conveyance of all, or any part, of the property of the said Club so vested in said Trustee, to any person or corporation designated in said resolution, and no charge shall be made for the execution and delivery of the said Deed of Conveyance by the said Trustee.''

Third: Under said declaration of trust, Menasha acquired and held, in the name of the trustee, several hundred acres of land. The Memphis Trust Company subsequently changed its corporate name to ''Bank of Commerce & Trust Company''; and then in 1945—desiring to liquidate—executed a quitclaim deed to First National Bank as trustee of Menasha. This deed specifically described all of the real estate, and recited:

''To have and to hold said premises, with all appurtenances thereunto belonging, unto the said party of the second part, as such trustee, and its successors in trust, to be held in accordance with the by-laws of said Menasha Outing Club.

. . .

''The title to the above described land is held by the party of the first part, as trustee for Menasha Outing Club, a voluntary unincorporated association. The execution of this deed has been authorized and requested by said Menasha Outing Club, acting by its President and Secretary.''

Fourth: In May, 1948, a majority of the members of Menasha decided that the lands had become too valuable to be retained for club purposes, and should be sold and the net proceeds distributed among the 26 certificate holders (i. e., members), who were all of the shareholders of Menasha. Accordingly, a meeting was duly called for such purpose, and all shareholders were present in person or by proxy; and a majority voted to sell the lands. Some question arose as to the power of the majority to bind the non-consenting minority to a sale of the properties; and in an effort to obviate that question, another meeting of the entire membership was duly

called to consider an amendment to the by-laws by adding the following language to § 6 of Article XI:

"The property of the club may be conveyed or ordered sold in part or as a whole at any lawful meeting of the club by the vote of a majority of the holders of certificates of membership in the club present at such meeting in person or by proxy, and the decision of such majority shall be binding on each and every member or holder of a beneficial interest in such property for the purpose of conveying the whole title therein to the purchaser."

Fifth: All members were notified of such meeting and its specific purpose, and at the meeting the amendment was adopted by a vote of 20 to 2. At a still later meeting—held on August 31, 1948, and also after due notice to all members, and attended by 23 of the 26 members—a resolution was unanimously adopted directing the officers and trustees of Menasha and also the First National Bank of Memphis, as the trustee holding legal title to the property, to join in a deed conveying all the lands and property to the purchaser whose proposition had been accepted. The resolution is lengthy, but reads in part:

"4. The President and Secretary, and/or the members (or a majority of the members) of the Executive Committee, and/or C. Thornton French, S. E. Ragland and John R. Flippin, as a Committee with respect to sale of property of Menasha Outing Club, or any of them, are hereby specifically authorized and directed to do any and all acts, and to institute (alone or with others) any and all legal actions, as they may be advised are necessary, desirable or proper for the perfecting or establishment of any right to effect disposition of Club property pursuant to the said contract of sale to Mrs. Mary King Kuhn, and/or to carry out the obligations and undertakings of Menasha Outing Club thereunder, and to bring about the complete performance of such contract by all parties thereto; . . .

"5. That each member or holder of certificate of membership voting in person or by proxy in favor of this

resolution does hereby expressly consent to the transfer and conveyance, as a part of and under the terms of such sale, of any individual undivided share or ownership which such member or holder of certificate of membership may have or hold in such property, real or personal, of said Menasha Outing Club, as fully as though such transfer and conveyance were made directly by such member or holder of certificate of membership in person.''

Sixth: Thereafter, appellant and two other dissatisfied members of Menasha—being the three members not present at the said meeting of August 31st—served notice on the First National Bank and the proposed purchaser, that the title sought to be conveyed would be defective because these three dissenters refused to agree to the sale. The First National Bank, as trustee, and five of the trustees of Menasha (including its president and secretary) then filed the present suit against the appellant, Weaver, and the other two dissatisfied certificate holders. The complaint alleged, *inter alia,* the facts heretofore detailed, and prayed:

''2. That the Court construe the trust under and pursuant to which the plaintiff, the First National Bank of Memphis, Trustee, holds as trustee the legal title to real estate of and on behalf of said Menasha Outing Club, and that the Court advise said plaintiff, the First National Bank of Memphis, Trustee, whether said plaintiff may or may not lawfully execute a conveyance of all of such real estate, held by it in trust for Menasha Outing Club, upon instructions of the proper officers of such Menasha Outing Club given pursuant to regular action and approval of more than a majority of the holders of certificates of membership outstanding of said Menasha Outing Club, but without unanimous action and approval of such holders of certificates of membership then outstanding.

''3. That plaintiffs have a decree, to the effect that all of the property, real and personal, of Menasha Outing Club, and any and all interests, legal or equitable, in such property, may lawfully be sold and conveyed by said The

First National Bank of Memphis, Trustee, and/or by Menasha Outing Club, acting through its President and Secretary, specifically upon authorization of such sale and conveyance by action in regular meeting of a majority of those holders of certificates of membership in Menasha Outing Club outstanding, and specifically without requirement or necessity that such sale and conveyance of such real and personal property of said Menasha Outing Club be approved and authorized, or joined in, unanimously by all holders of such certificates of membership in said Menasha Outing Club; and that any claim of defendants, to the effect that no sale of property of Menasha Outing Club may be made except by unanimous consent of all members, is without foundation in law and of no force and effect.''

Seventh: To this complaint the three defendants interposed demurrers which were overruled. The defendants elected to stand on the demurrers, and final judgment was entered in accordance with the prayer of the complaint. The other two defendants abandoned any appeal; and Weaver, as sole appellant, prosecutes the appeal to this court, presenting not only the question previously stated—*i. e.*, whether unanimous consent of the members is required to dispose of the property—but also the questions discussed in Topic II.

## OPINION

I. *Menasha's Type of Organization.* If Menasha were a pure partnership, then in the absence of partition, unanimity of consent would be required to allow valid disposition of the realty.[1] If Menasha were a corporation, then decisions could be made by less than all, unless specific provisions stated otherwise. Modern law has recognized many various forms of organizations in the range between the pure partnership and the corporation. For illustration, there are joint stock companies, associations, clubs, joint ventures, business trusts, religious societies, etc.[2] Each of these separate organizations has

---

[1] See 47 C. J. 758.

[2] See 7 C. J. S. 19; see also 14 C. J. S. 1280.

some of the attributes of a pure partnership and some of the attributes of a corporation; and it is generally necessary to examine the particular organization to see if, in regard to the question at issue, the organization more nearly resembles a pure partnership or a corporation. Thus, in *Doyle* v. *Kennedy,* 154 Ark. 573, 243 S. W. 66, we found that the joint stock company there in question still had partnership liability imposed on its shareholders; while in *Beets* v. *Hackathorn,* 159 Ark. 621, 252 S. W. 602, we found that the business trust there in question had exempted its shareholders *(cestui que trust)* from individual liability, but had not exempted the trustees from such liability.

We have quoted in some detail from Menasha's by-laws and other documents contemporaneous with its inception, because in *Harris* v. *Ashdown Potato Curing Assn.,* 171 Ark. 399, 284 S. W. 755, in discussing the nature of the organization there in question, we said:

"It was competent to prove anything that the parties said or did in the formation of the association in order to determine what the nature of the association was, . . ."

Menasha was not organized for profit (and profit is an ingredient of a joint stock company),[3] but for the pleasure of its members. There was no attempt made to have Menasha become a corporation, as was done in the case of Green River Club involved in *Rives* v. *McGaughey,* 210 Ark. 558, 197 S. W. 2d 49.

In 7 C. J. S. 19 cases from many jurisdictions are cited to sustain this statement:

"An 'association' is a body of persons acting together, without a charter, but upon the methods and forms used by corporations, for the prosecution of some common enterprise."

The complaint alleges, and the demurrer admits:

[3] In 48 C. J. S. 880 this definition appears: "A joint stock company is an association of individuals for purposes of profit, possessing a common capital contributed by the members composing it, such capital being divided into transferable shares."

". . . that said Menasha Outing Club is an unincorporated association formed in the year 1902 for the purpose of affording its members recreation through hunting and fishing, . . ."

To review and discuss all the cases cited in the excellent briefs would unduly extend this opinion. When we consider the provisions of the 1902 by-laws and other documents of Menasha in the light of our cases previously cited and the standard definition of an unincorporated association, it is clear that Menasha, as an unincorporated association, was to be governed in all respects by the vote of the majority. Article XI, sections 1 and 2 of the by-laws provide for the issuance of certificates and the transfer thereof. Article XI, section 6 provides that each certificate holder released "all right to a partition or division of the club property by process of law." Article XV provided that ten members of the club should constitute a quorum "for the purpose of doing any business for which the meeting is called." Article XVI provided that the by-laws might be amended at a meeting "by a majority vote of the membership present."

Furthermore, there is the fact that in 1902—when Menasha was organized and a trustee was selected to hold legal title to the property[4]—the Declaration of Trust provided that the trustee might transfer "all, or any part," of the club property upon the authority of "a resolution duly passed by a majority in attendance of the members" of Menasha, etc. It was then understood that unanimity of consent was not required for the sale of the property of the club. The original plan of Menasha was government by "the rule of the majority"; and we find nothing in the by-laws or subsequent actions of the club members to show any effort to change that original plan.

The fact that the quitclaim deed to First National Bank contained no such provision as that found in the 1902 declaration of trust is immaterial, because the powers of the majority—as reflected by the original transactions herein—were not restricted by the wording

---

[4] See *Lael* v. *Crook*, 192 Ark. 1115, 97 S. W. 2d 436.

of the conveyance from one trustee to another. Appellant has not claimed or intimated that any fraud, whim or caprice entered into the actions of the majority in making the sale of the properties; nor is it claimed that the price to be received from the property is other than full value. The question is, whether the majority in good faith may sell the property against the wishes of a lone dissenter. We hold that the chancery court correctly overruled the demurrer on that issue.

II. *Other Questions.* There are other questions presented by appellant which we find to be without merit.

1. Appellant insists that, since Menasha was organized as a hunting and fishing club and the bank held the title as trustee, therefore the shareholders could not sell the property and terminate the trust. But Menasha was not a religious or charitable trust dedicated to public good; instead, it was an association for the exclusive benefit of its own members; the fact that a trustee was used to hold legal title to the property did not convert Menasha into a religious or charitable trust that could not be terminated by the shareholders.

2. Appellant points out that all 26 shareholders of Menasha were not parties to this suit, and contends that necessary parties were omitted. Appellant's argument is:

"At common law and under Arkansas law a club, being a voluntary unincorporated association, cannot maintain or defend an action in its own name, and all the members must be made parties since such bodies in the absence of statute, have no legal entity distinct from that of their members. *Baskins* v. *United Mine Workers of America,* 150 Ark. 398, 234 S. W. 464; *District No. 21, United Mine Workers of America,* v. *Bourland,* 169 Ark. 796, 277 S. W. 546. A club or association must, as a general rule, sue in the names of all its members regardless of how numerous they may be. 5 C. J. Associations, § 102, pp. 1365-1366. Associations generally act in accordance with the principles of agency requiring specific appointment and no delegation of discretion. *No. La. Baptist Ass'n* v. *Milliken,* 110 La. 1002, 35 So. 264; Mechem on

Agency, 2nd Ed., Vol. 1, §§ 187, 192-193; Williston on Contracts, Vol. V, §§ 307, 308.''

Appellant evidently overlooks the following facts which, together, constitute a complete refutation of the argument:

a. The First National Bank as trustee is a party to the suit, and has the right to ask a court of equity for instructions concerning its powers and duties as trustee; and only the three dissenters ever questioned the Bank's right to perform the wishes of all the other members.

b. Banks, Erck, French, Ragland[5] and Spigener, as five of the trustees of Menasha (and Banks and Erck as president and secretary) are parties to this suit; and the resolution of August 31, 1948, provides that the president and secretary and a majority of the executive committee could bring this suit for Menasha, and that each certificate holder voting for the resolution consented and agreed to the conveyance ''as fully as though such transfer and conveyance were made directly by such member . . . in person.'' All of the members of Menasha voted for this resolution except the appellant and the two other dissatisfied certificate holders who were parties in the court below. In short, all the other shareholders of Menasha have agreed to the sale of the property, and it would be idle to join in as parties those who are in accord with what the trustees are attempting to do. Therefore, for the reasons herein stated, all necessary parties were before the court.

The decree of the chancery court is in all things affirmed.

---

[5] By stipulations now filed in this court it is shown that Ragland died after the submission and argument of the cause in this court. Nevertheless, we decide the case in view of the facts that (a) the death occurred after the submission and (b) a majority of the trustees of Menasha still remain as appellees to represent Menasha in the suit, along with its president and secretary.