WOODARD *v.* HOLLIDAY.

5-2803                                                361 S. W. 2d 744

Opinion delivered November 19, 1962.

*Cockrill, Laser, McGehee & Sharp,* for appellant.

*Lightle & Tedder,* for appellee.

JIM JOHNSON, Associate Justice. This case arises out of an automobile collision. On April 13, 1959, appellant F. M. Woodard was riding as an occupant in a car owned and driven by B. A. Yount, driving north on U. S. Highway 64-67, when Yount struck head-on a vehicle owned by appellee Lois Holliday, driven by appellee Donald L. Holliday and in which Priscilla Holliday was a passenger. This occurred south of North Judsonia Junction in White County. Appellees filed suit in White County Circuit Court on July 31, 1959, against B. A. Yount and

appellant, alleging the occurrence of the collision, that Donald and Priscilla Holliday sustained injuries in the collision and that the automobile of Lois Holliday was damaged. They further alleged that the collision was caused by Yount's negligence and that Yount's negligence was imputable to appellant. The complaint sought damages in favor of each of the appellees and against Yount and appellant, jointly and severally. The complaint was amended on December 3, 1959, to add West Bend Aluminum Company as a defendant, alleging that Yount and appellant were acting in furtherance of West Bend's business when the collision occurred, that the negligence of Yount was imputable to West Bend, and renewing all other allegations. West Bend appeared specially and moved to quash service on the grounds that it was a nonresident corporation not doing business in Arkansas, which motion was overruled. The cause came on for trial on October 2, 1961, and before the jury was impanelled appellee advised the court that a separate settlement had been made with West Bend, and that a dismissal would be taken as to West Bend and a covenant not to sue executed. This dismissal order was filed October 13, 1961. The case proceeded to trial. Appellant moved for a directed verdict at the appropriate times, contending that there was no substantial evidence upon which to base a finding that the negligence of Yount was imputable to appellant and the complaint not containing any other allegation of fault on appellant's part should be dismissed as to him. At the conclusion of the proof the trial court ruled that the evidence was insufficient to justify submission to the jury of the question of whether there was a principal-agent relationship between appellant and Yount, but did submit to the jury the question of whether appellant and Yount were engaged in a joint enterprise at the time of the collision. The jury found for the appellees, and on interrogatories specifically found that appellant and Yount were engaged in a joint enterprise. Judgment was granted against Yount and appellant, jointly and severally. From the judgment comes this appeal and a cross-appeal.

I. Direct appeal.

Appellant urges for reversal that the trial court erred in refusing to direct a verdict for appellant because there was no substantial evidence to base a finding that the negligence of B. A. Yount was imputable to appellant.

This court has consistently held that in order for a joint enterprise to arise two fundamental and primary requisites must concurrently exist, to-wit: A community of interest in the object and purpose of the undertaking in which the automobile is being driven and an equal right to direct and govern the movements and conduct of each other in respect thereto. If either or both of these elements is absent, there is no joint enterprise. *Stockton* v. *Baker,* 213 Ark. 918, 213 S. W. 2d 896.

In the case of *Wymer* v. *Dedman,* 233 Ark. 854, 350 S. W. 2d 169, we quoted with approval the following excerpt from 4 *Blashfield,* Ch. 65, § 2373, pp. 500-501:

"The doctrine of joint adventure, in connection with the operation of motor vehicles, should be restricted to those cases where the common right to control its operation and the correlative common responsibility for negligence in its operation either are clearly apparent from the agreement of the parties or *result as a logical and necessary conclusion from the facts as found.*" [Emphasis ours.]

The record reveals that B. A. Yount, a defendant below and the driver of the car which struck appellees was called as a witness by appellees. In addition to admitting negligence in the operation of his vehicle, he testified at length as to his relationship with appellant.

At the time of the collision, Yount was employed as a salesman for the West Bend Aluminum Company. When the collision occurred, he had been working for more than a year with appellant, who was his area manager. He had been employed through appellant, who furnished him with his employment contract. He had been trained by appellant, regularly attended sales meetings at appellant's home, delivered his orders to appellant, and received his commission checks through appel-

lant. He and appellant traveled together two or three times a week, going from town to town looking for prospects, working together. Yount would go where appellant suggested, and visa versa. Appellant had an **over-riding** commission on Yount's sales. On the day of the accident, appellant suggested delivering a coffee maker to a customer of Yount's in Bald Knob and indicated that he, appellant, had one or two people in Bald Knob that he could call on while on the trip. Part of Yount's testimony is as follows:

"Q. Now then, did you know any of the customers Mr. Woodard was going to call on in Bald Knob?

"A. No sir.

"Q. Would you have known how to get to them?

"A. No sir.

"Q. In what way would you have found out how to get there?

"A. I would have asked him how to get to their house and when he told me that is the way I would have gone.

"Q. How would you get to customers Mr. Woodard wanted to get to?

"A. If we were in my car, I would go the way he wanted me to, and if we was in his car I would suggest sometimes stopping here and let me see these people here.

"Q. In this instance did you know where you were going except that you were going to deliver the coffee maker?

"A. No sir.

"Q. Who would you have relied on to tell you where to go?

"A. F. M., after I got the coffee maker delivered."

Prosser on Torts (2d Ed.), § 65, discussing the law of joint enterprise, states that:

''The prevailing view is that a joint enterprise requires something beyond the mere association of the parties for a common end, to show a mutual 'right of control' over the operation of the vehicle — or in other words, an equal right in the passenger to be heard as to the manner in which it is driven. It is not the fact that he does or does not give directions which is important in itself, but rather the understanding between the parties that he has the right to have his wishes respected, to the same extent as the driver. In the absence of circumstances indicating such an understanding, it has been held that . . . fellow servants in the course of their employment, although they may have a common purpose in the ride, are not engaged in a joint enterprise.''

Many cases have denied the existence of a joint enterprise where nothing was shown except that two fellow employees had been riding together upon a common mission in the course of their employment. *Gilmore* v. *Grass,* 10th Cir., 68 F. 2d 150; *Dameron* v. *Yellowstone Trail Garage,* 54 Ida. 646, 34 P. 2d 417; *Stoker* v. *Tri-City Ry. Co.,* 182 Iowa 1090, 165 N. W. 30; *Slowik* v. *Union St. Ry. Co.,* 282 Mass. 249, 184 N. E. 469; *Loomis* v. *Abelson,* 101 Vt. 459, 144 Atl. 378.

In the case at hand the testimony does tend to establish the first requirement, a common purpose. But they do not show that Yount agreed that Woodard was entitled to an equal voice in the control of the car or that, if the two had been riding in Woodard's automobile, Yount would have had such an equal voice in its control. (The latter situation is important, because any control that Woodard might have exercised as a superior employee would not satisfy the requirement of *equality* of control.) Joint control and joint responsibility should go hand in hand; neither should exist without the other. If the passenger shares the responsibility for the physical control of the vehicle then it is proper for him to share the liability for the driver's negligence. But if the responsibility of control is not shared then the liability ought not to be shared. In the case at bar the trial court's error lies in permitting the jury to infer the

existence of the second requirement from proof of the first, which in effect amounted to doing away with the second requirement altogether.

In reviewing the denial of a motion for a directed verdict, we must view the evidence, with reasonable inferences arising therefrom, in the light most favorable to the party against whom the motion was directed. *Missouri Pacific Rd. Co.* v. *McKamey*, 205 Ark. 907, 171 S. W. 2d 932. After applying this rule, we still must hold that the trial court erred in refusing to direct a verdict for appellant and in submitting the question of joint enterprise to the jury.

II. Cross-appeal.

The point relied upon by appellees on their cross-appeal is that the trial court erred in ordering the sums alleged to have been paid by West Bend Aluminum Company on a covenant not to sue should be credited upon the amount of the verdict of the jury.

The complaint originally filed by appellees sought a recovery against B. A. Yount and appellant, jointly and severally, for personal injuries and property damage sustained in the collision. Thereafter appellees amended their complaint to add West Bend as a party defendant, increased the prayer for damages and sought judgment against Yount, appellant and West Bend, jointly and severally, on the allegation that Yount's negligence proximately caused their injuries and damages and was imputable to appellant on a theory, *inter alia*, of joint enterprise and to West Bend on a theory of master-servant. In due course West Bend filed an answer and prior to trial entered into a settlement with appellees, under the terms of which West Bend paid appellees $5,000, and appellees dismissed their complaint as to West Bend with prejudice and executed a covenant not to sue in favor of West Bend. Appellant moved the court for permission to introduce evidence of the payment from West Bend at the appropriate stage of trial, which motion was denied. When the verdicts were announced, appellant, in chambers, moved the court to credit the

$5,000 payment on the amount set forth in the jury verdict. The trial court allowed the sum received as a credit to the damages. Appellees allege this was error and that the judgment should be reformed and entered for the full amount found by the jury.

Section 4 of the Uniform Contribution Among Tortfeasors Act, Ark. Stat. § 34-1004, reads as follows:

"Release of one tortfeasor — Effect on injured person's claim. A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."

This statute was approved by this court in *Giem* v. *Williams*, 215 Ark. 705, 222 S. W. 2d 800. In that case evidence as to the amount paid by one of the joint tortfeasors was introduced into evidence at the trial of the other tortfeasor. After the verdict, the court correctly refused to reduce the amount of the verdict by the amount paid by the other tortfeasor prior to trial, since the jury was advised of the settlement and the amount prior to reaching its verdict. As the court said in that opinion:

"At all events, as between appellants and appellee, appellants in the trial of the case before the jury obtained the full benefit of the above-quoted section by introducing into evidence, proof as to the amount of money that appellee received from Tune. Certainly, in such circumstances, appellants were not entitled to have the court — after the verdict — make the allowance *again*." [Emphasis ours.]

In the instant case, the trial court refused appellant permission to introduce evidence of West Bend's settlement payment to appellees, but after verdict the trial court, under the theory that the law of joint tortfeasors applied, correctly credited the judgment with the $5,000 payment, since the jury had no knowledge of the West

Bend settlement and therefore assessed the total damages of appellees. Therefore, the principal question presented for our consideration is whether the law of joint tortfeasor relating to releases and covenants not to sue is applicable to this case.

This appears to be a case of first impression in Arkansas.

The rule set forth in 42 ALR 2d 958 is as follows:

"A master and servant each are liable for injuries caused by the negligence of the servant in the course of his employment. The servant is liable because he committed the tort and the master is liable under the doctrine of respondeat superior. While they may not be joint tortfeasors in the sense that their joint acts caused an injury, a majority of the courts hold that their liability is joint and several and each is liable to the full extent of the injuries and they may be joined in an action in the same manner as joint tortfeasors. The law of joint tortfeasors relating to releases and covenants not to sue is applicable." *United States* v. *First Sec. Bank of Utah*, 208 F. 2d 424, 42 ALR 2d 951.

We are constrained to approve and adopt this rule, for to hold otherwise will permit appellees to recover more than a fairminded jury determined their damages to be.

Affirmed on cross-appeal.

For the error in failing to direct a verdict for appellant and in submitting the question of joint enterprise to the jury, the judgment must be reversed, and, since the case appears to have been fully developed, the cause is hereby dismissed as to appellant. *Shanks* v. *Clark*, 175 Ark. 883, 300 S. W. 453.