Larry Don LOVELL, Sr., and Lynn A. Lovell, et al. *v.* Gerald
BROCK, Tim Thomas, and Alfred Lee Brock

96-1374                                                    952 S.W.2d 161

Supreme Court of Arkansas
Opinion delivered October 9, 1997

208

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *Floyd M. Thomas, Jr.*, , for appellant.

*Barrett & Deacon*, by: *David W. Calhoon* and *D.P. Marshall, Jr.*, for appellees'.

RAY THORNTON, Justice. On November 29, 1986, Larry Don Lovell, Jr., died as a result of a gunshot wound sustained while deer hunting. His parents, appellants, brought this action against Herbert Bartlett and a number of other individuals engaged in deer hunting in the area, contending that although Mr. Bartlett fired the shot that killed their son, vicarious liability should be imputed to other hunters who were staying at the Bartlett house. Appellants took a voluntary nonsuit against all the other hunters except for appellees, Gerald Brock, Tim Thomas, and Alfred Lee Brock.

The trial court found that Mr. Bartlett was solely responsible for the accident that caused Larry Jr.'s death, and entered a substantial judgment in favor of appellants against Mr. Bartlett. No appeal was taken from this judgment. In the trial court's order holding Mr. Bartlett solely responsible, the court found that there was no basis to impose vicarious liability on appellees and granted their motions for summary judgment. In their argument for reversal, appellants contend that appellees were members of an "association" or "club," imposing vicarious liability on appellees, or alternatively that they were involved in a joint venture or enterprise and should be held liable for Larry Jr.'s death. We have determined that the trial court's finding was not erroneous and affirm.

Several groups of hunters were seeking to kill deer on land owned by the Georgia Pacific company in Drew County on Thanksgiving weekend in 1986. The land was open to the public, and no hunting group had leased the land, or organized a club or association with officers and bylaws. Several persons from Marked Tree, including Larry Don Lovell, Sr., and his son were camped on Tommy Brashears' property near Ladelle. Nearby, ten or twelve other people from Marked Tree were camped.

In the same area, Mr. Bartlett owned a cabin and allowed several persons to use the cabin during deer season. These hunters paid Mr. Bartlett $100.00 per season to stay at the cabin. They did not meet and adopt any rules, did not own any property together, and did not lease any hunting rights. Among those who sometimes stayed at the cabin were appellees, Gerald Brock, Alfred Brock, and Tim Thomas, although Gerald Brock was not in Drew County on the day of the tragic accident.

On the day of the accident, a local hunter, Monroe Cottington, and his brother-in-law, Royce Wesson, were also nearby in the woods hunting deer. Although the season for using dogs was over, Mr. Cottington was running his dogs, and he gave an unsworn statement that Alfred Brock had asked him to do so. Under oath, Mr. Brock denied making that request. Tim Thomas had killed a deer by himself that morning, and he kept it for his own use. Hunters from at least three camps were in the area where Larry Jr. was fatally wounded.

The young victim, properly outfitted in an orange coat and cap, had been left at a pine top beside the road, while his father and another hunter looked for other stands. Mr. Brock was more than three-quarters of a mile away. Mr. Bartlett was driving along the road near the boy and had picked up Mr. Thomas, who was walking through the woods. Hearing dogs, Mr. Bartlett stopped the truck, and both he and Mr. Thomas loaded their guns as they were getting out of the truck. Almost immediately, a deer appeared on the left side of the road seventy or eighty yards ahead. Larry Jr.'s pine top was on the right side of the road about halfway between Mr. Bartlett and the deer. Larry Jr. fired at the deer, and almost simultaneously, Mr. Bartlett fired his rifle. The projectile

from Mr. Bartlett's rifle struck Larry Jr. in the back and emerged from his abdomen. He died that evening during surgery in Pine Bluff. Mr. Thomas did not fire his shotgun and did not see Larry Jr. in time to warn Mr. Bartlett. However, the young man was in plain view.

The trial court found "that the proximate cause of this terrible accident was the negligence of the Defendant, Herbert Bartlett, only, and that the negligence of Herbert Bartlett is not imputed to the Defendants, Gerald Brock, Alfred Lee Brock, or Tim Thomas, or either of them." The trial court also found "[t]hat there is no genuine issue as to any material fact that gives rise to joint or vicarious liability as to the Defendants, Gerald Brock, Alfred Lee Brock, or Tim Thomas, and the Defendants are entitled to a Judgment as a matter of law." Based on these findings, the trial court granted summary judgment to appellees.

This appeal raises a single point for reversal. Appellants argue that the court erred in granting summary judgment because appellees were vicariously liable either due to their involvement in a joint enterprise or because they were members of an "association" or "club."

Summary judgment should only be granted where there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1997) (citing Ark. R. Civ. P. 56). The evidence is viewed in the light most favorable to the party opposing the judgment, and we resolve all inferences and doubts against the moving party. *Id.* If the party moving for summary judgment makes a prima facie showing that no issues of fact exist, and the nonmoving party fails to present proof that such issues do exist, then we must affirm the trial court's grant of a summary judgment. *Id.* Our review of an order granting summary judgment is limited to the pleading, affidavits, and other supporting documents that the parties file in support of their arguments. *Id.* These well established principles guide our analysis of the issues in this case.

*Joint Enterprise or Venture:*

■ First, we address appellants' argument that the trial court erred in granting summary judgment to appellees because a joint enterprise existed, imposing vicarious liability upon appellees. To find that a joint enterprise existed, Arkansas law requires only a showing of: (1) a common object and purpose of the undertaking; and (2) an equal right to direct and govern the movements and conduct of each other in respect to the common object and purpose of the undertaking. *RLI Insurance Co. v. Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991). We have stated that the doctrine of joint enterprise is a very complex doctrine and have noted that it has generally "fallen into disrepute." *Neal v. J.B. Hunt Transp., Inc.*, 305 Ark. 97, 101, 805 S.W.2d 643, 645 (1991) (citing W. Page Keeton, *et al.*, PROSSER AND KEETON ON THE LAW OF TORTS, § 72, at 521 (5th ed. 1984)). In *Neal*, we said that "[w]hile we are not enamored of the joint enterprise doctrine, it is a part of the common law of this State." *Id*. at 101, 805 S.W.2d at 645. We determined that the proper query for joint enterprise is whether there is enough evidence to show "an equal right to direct and govern the movements and conduct of each other in respect to the common object and purpose of the undertaking." *Id*. at 101, 805 S.W.2d at 645.

Appellants argue that appellees formed a joint enterprise by engaging in the one hunt that resulted in Larry Jr.'s death. The evidence shows that the group lodging in Mr. Bartlett's house may have had a common object and purpose in renting space in the house while hunting deer. However, there is no evidence to prove that any of the hunters had an equal right to direct and govern the movements and conduct of the group, or each other, with respect to the common object and purpose of the undertaking.

■ Because the essential elements for a joint enterprise have not been proven, we conclude that the trial court did not err in finding that Mr. Bartlett and the other hunters were not involved in a joint enterprise.

*Associations and Clubs*:

Appellants also argue that the trial court erred in finding no legal basis for the vicarious liability of the hunters because they

were members of a hunting club or association. The necessary predicate for reaching the question whether there is a legal basis for the application of vicarious liability to members of an association is a determination that an association or club was formed at all under the circumstances of this case.

■ We have defined an "association" as "a body of persons acting together, without a charter, but upon the methods and forms used by corporations, for the prosecution of some common enterprise." *Weaver v. First Nat'l Bank of Memphis, Trustee*, 216 Ark. 199, 207, 224 S.W.2d 813, 817 (1949). At issue in *Weaver* was whether the Menasha Outing Club, an unincorporated association formed as a hunting and fishing recreational club, was authorized to sell property belonging to its members without the appellant's consent. It was uncontested that some sort of organization had been formed, and the Club operated under its own bylaws. *Id.* The court determined that it was appropriate to look to the Club's bylaws and supporting documents because such evidence "was competent to prove anything that the parties said or did in the formation of the association in order to determine what the nature of the association was . . . ." *Id.* at 207, 224 S.W.2d at 817 (quoting *Harris v. Ashdown Potato Curing Ass'n*, 171 Ark. 399, 284 S.W. 755 (1926)). We noted that the Club was organized for the pleasure of its members rather than for profit, with no attempt to incorporate. *Id.*

While the issue in *Weaver* is different, the language on associations is instructive. Here, there were no such bylaws or efforts to incorporate or create any formal organization. The group staying at Mr. Bartlett's house had no membership requirements or elected officers. It was shown that Mr. Bartlett was the sole party with authority over the operation of the camp. The property was owned by Mr. Bartlett, and the hunters abided by his terms without any written or other formalized agreement. The other hunters possessed no ownership rights in the property. Each one was paying $100 a season for the privilege of sleeping and eating at the house, although no joint or communal arrangements had been made. There was no promise of future years' hunts at a fixed amount, and no promise of a particular place in which to hunt. The hunters understood that Mr. Bartlett did not tolerate

drinking alcoholic beverages on the property, although again this was not a formal rule. Unlike the language quoted above on the definition of an association, the hunters did not appear to act upon the methods or forms used by corporations, or upon any formalized methods or forms at all. Neither did they have any apparent right of control or voting rights. Therefore, unlike *Weaver*, there was no showing of an intent, express or implied, to create a club or association.

■ In our decision in *Harris v. Ashdown Potato Curing Ass'n, supra,* we stated that "the mere purchase of space in the curing-house by one who was not otherwise interested in the business would not constitute a membership in the association . . . ." *Harris*, 171 Ark. at 411, 284 S.W. at 760. *Harris* is analogous to the case before the court because the depositions and statements indicate that the hunters thought that they were basically purchasing the right to occupy and eat in Mr. Bartlett's house. There is no indication that they thought they were purchasing a membership in an association that would entitle them to have future rights or interests in the property. There is evidence that the hunters shared meals and that they followed the practice of dividing the kill with the owner of the dogs, as well as sometimes sharing their kill with other hunters. There was no genuine issue of material fact contrary to the showing that these practices were based upon the decisions of each individual hunter.

Both appellants and appellees agree that this court has not imposed vicarious liability on members of an unincorporated association for the negligence of one member of the group solely on the basis of membership in the group. Appellants cite us to two cases that arose out of federal court in support of their argument that Arkansas law favors holding members of an association or club vicariously liable for the tortious conduct of its members. In *United Mine Workers v. Coronado Co.*, 259 U.S. 344 (1922), the Supreme Court determined that the individual members of a local labor union could be held liable for damages resulting from the violent acts of a few of the members. The union operated under a constitution; and it had an express joint purpose, elected representatives, and an organization of principal officers. *Id.* The Court stated that associations cannot be sued in the organization's

name, but liability may be had against each individual member. *Id.* The Court then carved out a special category of such organizations in the labor field and concluded that such organizations may be sued in federal court for their tortious acts; however, this decision rests upon the existence of an association. *Id.*

Next, appellants cite us to *Ketcher v. Sheet Metal Workers' Int'l Ass'n*, 115 F.Supp. 802 (E.D. Ark. 1953). This case also involved an unincorporated international labor union. The *Ketcher* court restated the principle that an unincorporated association may be liable for the tortious acts of its agents, although the association cannot be sued as an entity. *Id.* These are recognized principles of law and would be applicable to the case at bar only if we determine that an association existed with respect to these hunters.

Unlike *United Mine Workers* and *Ketcher*, this case does not involve an associated or incorporated group. Rather, in this case, the members had only the rights to occupy Mr. Bartlett's house and take meals there. They had no written "constitution" or agreement, and the only commonality of purpose was to eat and sleep in a place near hunting woods. Unlike *United Mine Workers* and *Ketcher*, the evidence in this case gives us no indication that a club or association, incorporated or unincorporated, was formed.

■ Viewing the evidence in the light most favorable to the party opposing the motion, we conclude that there is no genuine question of material fact as to the nonexistence of an association or club. The evidence shows that such an entity was neither intended nor created. We affirm the trial court's finding that appellees were not vicariously liable for the tortious act of Mr. Bartlett on this basis.

Even if an issue of material fact remained as to the formation of an association or the existence of a joint enterprise, it would still not be necessary to return this matter for a jury determination of that question. This court has most frequently applied the principles of vicarious liability in the context where it has found a master-servant or agency relationship, *see St. Joseph's Regional Health Ctr. v. Munos*, 326 Ark. 605, 934 S.W.2d 192 (1996); or in automobile cases, *see Reed v. McGibboney*, 243 Ark. 789, 422 S.W.2d 115 (1967) (holding that there was sufficient evidence "of

community of interest and of an equal right to share in the control and operation of the vehicle to warrant the submission to the jury of [the defendant's] vicarious liability upon either the theory of joint enterprise, or the theory of agency, or both").

■ Prosser states that the basis of a finding of imputed vicarious liability is still negligence, although the law has effectively broadened the action by imposing the negligence on an innocent defendant. PROSSER AND KEETON ON THE LAW OF TORTS, *supra* § 69, at 499. To prove a cause of action based on negligence, the plaintiff must not only prove both that he sustained damages and that the defendant was negligent, but also that the defendant's negligence was the proximate cause of the damages. *Ouachita Wilderness Inst. v. Mergen*, 329 Ark. 405, 947 S.W.2d 780 (1997).

■ In *Craig v. Traylor*, 323 Ark. 363, 915 S.W.2d 257 (1996), the court stated that proximate cause must be determined before fault may be assessed and that proximate cause is typically a question for the jury. *Id.*; *see also Ouachita Wilderness Inst.*, 329 Ark. at 414, 947 S.W.2d at 785. The only time that proximate cause may become a question of law is when "reasonable minds could not differ." *Id.* at 370, 915 S.W.2d at 260. The court defined "proximate cause" as "that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Id.* at 370, 915 S.W.2d at 260 (quoting *Williams v. Mozark Fire Extinguisher Co.*, 318 Ark. 792, 888 S.W.2d 303 (1994)).

The Supreme Court of Alabama has considered this issue in *Hall v. Booth*, 423 So.2d 184 (Ala. 1982). In *Hall*, the only issue on appeal was whether the members of an unincorporated association were vicariously liable for the negligent shooting of a thirteen-year-old boy during a deer hunt. *Id.* at 185. The trial court had granted summary judgment with respect to all members of the club, except the member who accidentally shot and killed the boy. *Id.* The court determined that while the acts of the other hunters who were conducting the hunt may have been negligent, the appellant had the burden of proving that the appellees' negligence was the proximate, or direct and immediate, cause of the

injury. *Id.* The court concluded that it would not extend the liability of the member who fired the fatal shot to the other members because the appellant had failed to meet his burden of proving the element of proximate causation, and it affirmed the summary judgment. *Id.*

In this case, the trial court found that the proximate cause of the accident was the negligence of Mr. Bartlett *only*, and that his negligence was not imputed to appellees. Viewing the facts in the light most favorable to appellants, even if appellees negligently participated in the illegal act of running dogs to harvest a deer, Mr. Bartlett's negligent act was the immediate and direct cause of Larry Jr.'s death. The trial court correctly found that Mr. Bartlett's act was the proximate cause because it broke any causal chain that would be necessary to broaden his liability to appellees.

▉ We conclude that there is no genuine issue of material fact and that the trial court did not err in finding that the liability of Herbert Bartlett did not extend to appellees.

Affirmed.