Wayelon YANT *v.* Sharon WOODS

03-53                                                              120 S.W.3d 574

Supreme Court of Arkansas
Opinion delivered June 26, 2003

*McHenry & McHenry*, by: *Donna McHenry*, *Robert McHenry*, and *Greg Taylor*, for appellant.

*Matthews, Sanders, & Sayes*, by: *Doralee I. Chandler* and *Roy Gene Sanders*, for appellee.

Tom Glaze, Justice. This appeal requires our examination of the tort doctrine of joint enterprise. Appellant Wayelon Yant, appellee Sharon Woods, and Cliff Jenkins were all employed by Hoosier Trucking; the three delivered vehicles around the country for Hoosier. On June 11, 1999, Yant, Woods, and Jenkins had each delivered a bus to Macungie, Pennsylvania, and decided to rent a car together in order to return to Arkansas. Jenkins paid the rental charge on his credit card, and he was the first to begin their drive, with Yant in the passenger seat and Woods in the back. The three stopped to refuel the car and to use

the restroom in Raphine, Virginia. When Yant and Jenkins came back out of the gas station, Woods was sitting behind the steering wheel. Jenkins got in the front seat, and Yant sat in the back. About half an hour after Woods began driving, an eighteen-wheeler began to pull into her lane. In an attempt to avoid being hit by the truck, Woods swerved onto the shoulder, causing her to lose control and flip the vehicle over. Yant, who was lying down in the back seat, suffered head injuries in the accident.

In June of 2001, Yant sued Woods, Jenkins, the car rental company, his insurance company, and his employer. Eventually, all defendants except Woods were dismissed from the suit. Woods then filed a motion for summary judgment, claiming that she and Yant were engaged in a joint enterprise at the time of the accident; as a consequence, Yant was barred by the joint-enterprise doctrine from recovering anything from her. The trial court granted Woods's motion, and Yant appeals.

■ ■ This court has held that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. *Palmer v. Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001). Once a moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must demonstrate a genuine issue of material fact by meeting proof with proof. *Id.* On appeal, the reviewing court simply determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Chavers v. General Motors Corp.*, 349 Ark. 550, 79 S.W.3d 361 (2002).

■ To find that a joint enterprise exists, Arkansas law requires a showing of (1) a common object and purpose of the undertaking, and (2) an equal right to direct and govern the movements and conduct of each other in respect to the common object and purpose of the undertaking. *Lovell v. Brock*, 330 Ark. 206, 952 S.W.2d 161 (1997); *RLI Ins. Co. v. Coe.* 306 Ark. 337, 813 S.W.2d 783 (1991). Both requirements must be shown, or

there is no joint enterprise. *See Woodard v. Holliday*, 235 Ark. 744, 361 S.W.2d 744 (1962).

■ The effect of the doctrine's application is that the driver's negligence or misconduct is imputed to the passenger to bar the passenger's recovery. W. Page Keeton, *et al.*, *Prosser & Keeton on the Law of Torts*, § 72, at 518 (5th ed. 1984). In *Neal v. J.B. Hunt Transp., Inc.*, 305 Ark. 97, 805 S.W.2d 643 (1991), this court explained that the proper query for joint enterprise is whether there is enough evidence to show "an equal right to direct and govern the movements and conduct of each other in respect to the common object and purpose of the undertaking." *Id.*; *see also Woodard, supra*. In the case now before us, both Yant and Woods agree that they were involved in a common object and purpose — that is, to obtain a rental car for the return trip to Arkansas. It is only the second requirement that is contested in this case. Thus, we must determine whether Woods and Yant showed an equal right to direct and govern the movements and conduct of each other on their trip home.

■ Many of this court's cases dealing with joint-enterprise issues have relied on Prosser and Keeton for guidance. The *Woodard* case, in particular, quoted the treatise extensively as follows:

> The prevailing view is that a joint enterprise requires something beyond the mere association of the parties for a common end, to show a mutual "right of control" over the operation of the vehicle — or in other words, an equal right in the passenger to be heard as to the manner in which it is driven. It is not the fact that he does or does not give directions which is important in itself, but rather the understanding between the parties that he has the right to have his wishes respected, to the same extent as the driver. In the absence of circumstances indicating such an understanding, it has been held that . . . fellow servants in the course of their employment, although they may have a common purpose in the ride, are not engaged in a joint enterprise.

*Woodard*, 235 Ark. at 748 (quoting *Prosser & Keeton* § 72, at 519–20).[1]

---

[1] At the time of the *Woodard* decision in 1962, the cited section was § 65.

The *Woodard* case involved a car accident in which Yount was driving his own car, and Woodard, Yount's boss, was a passenger. Yount struck head-on a vehicle occupied by the Holliday family. The Hollidays sued both Yount and Woodard, alleging that the collision was caused by Yount, whose negligence was attributable to Woodard. The evidence at trial showed that Yount would drive wherever Woodard instructed him to go, and that Yount would rely on Woodard's directions when they were deciding where to go. The trial court instructed the jury on the question of joint enterprise. This court reversed, holding that it was error to permit the jury to decide whether a joint enterprise existed. In so doing, the *Woodard* court quoted the above passage from *Prosser & Keeton*, and noted that, although the evidence did show a common purpose in the undertaking, it did not show that the parties had an equal voice in the control of the car. The *Woodard* court wrote as follows:

> Joint control and joint responsibility should go hand in hand; neither should exist without the other. If the passenger shares the responsibility for the physical control of the vehicle then it is proper for him to share the liability for the driver's negligence. But if the responsibility of control is not shared then the liability ought not to be shared. In the case at bar, the trial court's error lies in permitting the jury to infer the existence of the second requirement from proof of the first, which in effect amounted to doing away with the second requirement altogether.

*Woodard*, 235 Ark. at 748-49.

More recently, in *Neal*, 305 Ark. 97, 805 S.W.2d 643, this court held that it was not error for the trial court to have given a joint-enterprise instruction, because the driver of the vehicle testified that she would have turned the driving back over to her passenger if he had asked. This court pointed out that the essential question in such cases is "whether the parties can be found by implication to have agreed to an equal voice in the management of the vehicle." *Neal*, 305 Ark. at 101. *See also Reed v. McGibboney*, 243 Ark. 789, 422 S.W.2d 115 (1967) (where the evidence showed that one of the passengers in the car stated he could have asked the driver to stop the car and could have taken control himself at any time, a joint-enterprise instruction was appropriate).

Similarly, our court of appeals has addressed the joint-enterprise doctrine in the context of whether a passenger in a vehicle was "legally entitled to recover" from the driver, for purposes of making a claim under the underinsured motorist provisions of his automobile insurance. *Southern Farm Bur. Cas. Ins. Co. v. Pettie*, 54 Ark. App. 79, 924 S.W.2d 828 (1996). In that case, Pettie was injured while riding as a passenger in his employer's truck when it ran off the road and overturned. At the time of the accident, the truck was being driven by Pettie's co-employee, Ronnie McClellan, and Pettie was sleeping in the passenger seat. Pettie's medical expenses were paid by his workers' compensation carrier, but Pettie claimed additional damages that were not covered by his workers' compensation benefits, and he filed a claim pursuant to the UIM policy he had with Southern Farm Bureau. Southern Farm Bureau denied Pettie's claim, asserting that, under the joint-enterprise doctrine, Pettie was not legally entitled to recover from the owner or operator of the vehicle. The trial court rejected Southern Farm Bureau's argument that the joint-enterprise doctrine barred Pettie from making a claim under his UIM policy, and the court awarded Pettie $25,000. *Pettie*, 54 Ark. App. at 82-83.

On appeal, Southern Farm Bureau argued again that Pettie was barred from recovering anything from the operator of the vehicle under the joint-enterprise doctrine. The court of appeals disagreed, however, relying on *Woodard, supra,* and holding that there was insufficient evidence to support a finding that there was an equal right to control the vehicle. The court wrote, "The closest the evidence comes to supporting the right to control issue here is [Pettie's] answer of 'Yes' to the question of whether he and the driver had an 'equal voice in what you were doing and what you wanted to do on the trip.'" *Id.* at 90.

Here, by way of contrast, the evidence indisputably showed that the two requirements were present in the nature of the agreement between Yant, Woods, and Jenkins. The evidence in this summary-judgment case consisted of the deposition testimony of Yant and Woods. After describing how the accident occurred, Woods testified about how the group functioned, stating the following:

> [W]hen we take a run, if there's however many, it's an equal — I mean, three, four. It's usually an equal thing. And everybody

will — you don't ever say you're going to do 200 each or whatever. We just do an equal thing, unless for some reason somebody doesn't feel like the drive, or if somebody says, "If you feel like you're sleepy, let me know, and I'll drive for you." But it's just kind of an equal — however many people you have, you do your equal part.

Likewise, Yant explained the process by which drivers for Hoosier Trucking decide how they will get home, stating that if there are multiple buses going to the same location, the people who are doing the delivery work together to "get back as reasonable [*sic*] as you possibly can and, you know, comfortably." In order to do so, the drivers "share expenses on the automobile [that is rented to get back home]. You share the rental fee, the gasoline, whatever is involved." He agreed that the situation was a "joint thing" where "everyone is equal," and answered affirmatively to the statement, "You don't boss them; they don't boss you." Yant testified that both Woods and Jenkins had the same degree of input that he did, and he had the same "say-so" in the operation and control as they did.[2]

■ ■ Although the existence of a joint enterprise is ordinarily a question for the jury, *see RLI Ins. Co. v. Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991), in the present case, it is abundantly clear that the parties testified in agreement on the essential factual question — *i.e.*, whether the parties "can be found by implication to have agreed to an equal voice in the management of the vehicle." *Id.* at 346. As discussed above, the facts showing the first element — the common object and purpose to the undertaking — were undisputed. With respect to the second element, both Yant and Woods affirmed that every person in the car had an equal

---

[2] The dissent asserts that the fact that "the threesome had no common rules" leads to the conclusion that "whoever was driving was in control." However, none of our joint enterprise cases require a set of "common rules" between the participants. In simple terms, the dissent would require an agreement that each participant drive one-third of the trip and, if not, control is in the one participant driving at the time of the accident. No joint enterprise cases have ever held such control must be parceled out to each person. Instead, all that is required is finding that all agreed to an equal voice in the control. Contrary to the dissent's interpretation of the phrase, "You don't boss them; they don't boss you," we draw from this language the conclusion that no one member of the group was superior to either of the others, and each member had a voice equal to the others.

right to direct and govern the movements and conduct of each other in respect to the common object and purpose of the undertaking.

Although Yant argues that he was asleep in the back seat and therefore could not have controlled anyone's driving, Prosser in his treatise explains that "[i]t is not the fact that [the passenger] does or does not give directions which is important in itself, but rather the understanding between the parties that he has the right to have his wishes respected, to the same extent as the driver." *Prosser & Keeton* § 72, at 519. It is clear from the testimony that both Yant and Wood considered everyone to have an equal right to control the vehicle. Because there was no genuine issue of material fact, the trial court did not err in granting Woods's motion for summary judgment.

■ Yant attempts to raise a second point on appeal, which was not argued, considered, or ruled on at the trial court level. He submits the trial court was wrong in holding that, since a joint enterprise was shown to have existed, the driver, Woods, had no responsibility to the passenger, Yant. Yant further argues that the trial court's ruling in favor of Woods "totally negates the com-mon-law doctrine of negligence." Yant claims this holding is "erroneous and misinterprets common-law negligence and vicari-ous liability in a joint enterprise." Nonetheless, as Woods points out, this argument was not advanced below, so it is not preserved for appeal. At trial, Yant argued only that summary judgment was inappropriate because there was a question of fact as to whether he had an equal right to control the manner in which the vehicle was being driven at the time of the accident. It is well settled that this court does not consider arguments raised for the first time on appeal. *Short v. Westark Community College*, 347 Ark. 497, 65 S.W.3d 440 (2002) (refusing to consider arguments not brought up in a motion for summary judgment). A party cannot change the grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial. *Jacobs v. Yates*, 342 Ark. 243, 27 S.W.3d 734 (2000); *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998).

■ As a final matter, we fully recognize that the doctrine of joint enterprise appears to have fallen into considerable disfavor. In *Neal, supra,* we said that we were "not enamored [with] the

joint-enterprise doctrine, [but] it is a part of the common law of this State." *Neal*, 305 Ark. at 101. In *Lovell v. Brock*, 330 Ark. 206, 952 S.W.2d 161 (1997), this court pointed out that joint enterprise is "a very complex doctrine . . . that . . . has generally fallen into disrepute." *Lovell*, 330 Ark. at 211. Professor Prosser states that courts "should be expected to continue to narrow the scope of the doctrine in order to ameliorate its rigors." *Prosser & Keeton on Torts* § 72, at 522. In *Webber v. Sobba*, 322 F.3d 1032 (8th Cir. 2003), the Eighth Circuit expressed its belief that this court would not apply the joint-enterprise doctrine to suits among members of the enterprise. As we previously pointed out, that specific issue was not argued at trial, so we are unable to consider the merits of that issue in this appeal. *Cf. Prosser & Keeton* § 72, at 521.

This court has in the past announced its willingness to revisit and reexamine our holdings on a given issue. *See, e.g., Spears v. Spears*, 339 Ark. 162, 3 S.W.3d 691 (1999); *Dawson v. Gerritson*, 290 Ark. 499, 720 S.W.2d 714 (1986). By this opinion, we announce our intention to reexamine the viability of the joint-enterprise doctrine, including whether it should be available as a defense against another member of the enterprise.

Affirmed.

BROWN and IMBER, JJ., dissent.

CORBIN, J., not participating.

ROBERT L. BROWN, Justice, dissenting. The joint-enterprise doctrine has been criticized of late as an anachronism, *see* W. Page Keeton, et. al., *Prosser and Keeton on the Law of Torts* § 72 at 521 (5th ed. 1984) ("The courts should be expected to continue to narrow the scope of the doctrine to ameliorate its rigors."), and I agree with the majority opinion that this court should reexamine our adherence to the doctrine at the next appropriate opportunity.

Where I take issue with the majority is over the question of whether the existence of a joint enterprise should be decided in this case by summary judgment as a matter of law. Clearly, our caselaw supports the proposition that the existence of a joint enterprise is ordinarily a question of fact for the jury. *See, e.g.,*

*Neal v. J.B. Hunt Transp., Inc.*, 305 Ark. 97, 101, 805 S.W.2d 643, 645 (1991). As the majority points out, "[t]o find that a joint enterprise existed, Arkansas law requires only a showing of: (1) a common object and purpose of the undertaking; and (2) an equal right to direct and govern the movements and conduct of each other in respect to the common object and purpose of the undertaking." *Lovell v. Brock*, 330 Ark. 206, 211, 952 S.W.2d 161, 163-164 (1997) (citing *RLI Ins. Co. v. Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991)). I agree that the first element is undisputed and established as a matter of law in this case. In my view, however, the issue of equal right to control is in dispute.

The majority concludes that the deposition testimony of Yant and Woods establishes as a matter of law that "every person in the car had an equal right to direct and govern the movements and conduct of each other in respect to the common object and purpose of the undertaking." I disagree. It is true that Yant and Woods testified that everyone was equal, but there was additional testimony that does not support that equality. Manifestly, the threesome had no common rules regarding driving hours, route, or who would drive at what times. When Woods opted to drive, she simply took over the wheel and was left to her own devices, without control by the other two. Yant testified that he "[had] no idea how it happened that Ms. Woods drove next. I definitely did not tell her to drive." He added regarding the other two, "you don't boss them; they don't boss you." Woods testified that regarding the three participants, "you don't ever say you're going to do 200 [miles] each or whatever." All of this seems to fly in the face of an "equal right to direct and govern movements," when one of them was driving. Rather, it appears that whoever was driving was in control. In my opinion, this testimony establishes an issue of fact to be resolved by the jury over what degree of control each of the participants had over the course of the trip back to Conway.

I would reverse and remand for a trial. For these reasons, I respectfully dissent.

CORBIN, J., not participating.

IMBER, J., joins.